No. 05-507C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CRAIG-BUFF LIMITED PARTNERSHIP,
a Nevada Limited Partnership,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

TIMOTHY TREANOR
Small Business
Administration

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

August 26, 2005

Attorneys for Defendant

TABLE OF CONTENTS

Page

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 1

I. Nature Of The Case . . . . . . . . . . . . . . . . . . 1

II. Issues Presented . . . . . . . . . . . . . . . . . . . 2

III. Statement Of Facts . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Summary Judgment Is Appropriate Here . . . . . . . . . 6

II. An Express Agreement Between SBA And Craig-Buff Precludes Plaintiff's Implied-In-Fact Contract Claim . . . . . . . . . . . 8

III. SBA Did Not Provide Incorrect Information To Craig-Buff . . . . . . . . . . . . . . . . . . . 9

IV. Defendant Is Entitled To Judgment Upon Craig-Buff's Claim That SBA Breached The Warranty Of Good Faith And Fair Dealing . . . . . . 12

V. This Court Lacks Jurisdiction To Consider Craig-Buff's Claim Of Detrimental Reliance/ Misrepresentation . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

### FEDERAL CASES


Page(s)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . 6-7

Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595 (1994) . . . . . . . . . . . . . . . . . . . 12

Atlas Corp. v. United States, 895 F.2d 745 (Fed. Cir.), cert. denied, 498 U.S. 811 (1990) . . . . . . . . . . . . . 8

Bradley v. Chiron Corporation, 136 F. 3d. 1317 (Fed. Cir. 1998) . . . . . . . . . . . . . 13

Caldwell & Santmyer, Inc. v. United States, 55 F.3d 1578 (Fed. Cir. 1995) . . . . . . . . . . . . . . 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . 7

Centrex Corporation v. United States, 395 F. 3d. 1283 (Fed. Cir. 2005) . . . . . . . . . . . . . 14

City of El Centro v. United States, 922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . . . . . 8

DeRoo v. United States, 12 Cl. Ct. 356 (1987) . . . . . . . . . . . . . . . . . . . 16

H.H.O., Inc. v. United States, 7 Cl. Ct. 703 (1985) . . . . . . . . . . . . . . . . . . . . 17

Industries v. United States, 905 F.2d 1518 (Fed. Cir. 1990) . . . . . . . . . . . . . . 13

L.P. Consulting Group v. United States, 66 Fed. Cl. 238 (2005) . . . . . . . . . . . . . . . . . . 8,13

McCauley v. United States, 38 Fed. Cl. 250 (1997) . . . . . . . . . . . . . . . . . . . 16

Mega Constr. Co. v. United States, 29 Fed. Cl. 396 (1993) . . . . . . . . . . . . . . . . . 16-17

TABLE OF AUTHORITIES Con't

Page(s)

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . 6

Office of Personnel Management v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . 10

Roedler v. Department of Energy,
255 F.3d 1347 (Fed. Cir. 2001) . . . . . . . . . . . . . . 8

Ruttenberg v. United States,
65 Fed. Cl. 43 (2005) . . . . . . . . . . . . . . . . . . 8

Schism v. United States,
316 F.3d 1259 (Fed. Cir. 2002) (en banc) . . . . . . . . . 8

Somali Dev. Bank v. United States,
205 Ct. Cl. 741, 508 F.2d 817 (1974) . . . . . . . . . . 16

Smithson v. United States,
847 F.2d 791 (Fed. Cir. 1988) . . . . . . . . . . . . . . 16

Southern California Edison v. United States,
58 Fed. Cl. 313 (2003) . . . . . . . . . . . . . . . . . 12

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . 7

Total Med. Mgmt., Inc. v. United States,
104 F.3d 1314 (Fed. Cir. 1997) . . . . . . . . . . . . . 8

United Pacific Ins. Co. V. Roche,
401 F.3d 1362 (Fed. Cir. 2005) . . . . . . . . . . . . . 11

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . 15

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . 15

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES Con't

Page(s)

### FEDERAL CASES

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . 15

### FEDERAL STATUTES

15 U.S.C. § 636(a) . . . . . . . . . . . . . . . . . . . . . 3

15 U.S.C. § 636(a)(2)(C)(ii) . . . . . . . . . . . . . . . . 9

15 U.S.C. §§, 695-697(f) . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. 2680(h) . . . . . . . . . . . . . . . . . . . . . 16

### FEDERAL REGULATIONS

13 C.F.R. § 120.800 . . . . . . . . . . . . . . . . . . . . 3

13 C.F.R. § 120.2(a) . . . . . . . . . . . . . . . . . . . . 4

13 C.F.R. § 120.2(a)(iii) . . . . . . . . . . . . . . . . . . 4

13 C.F.R. § 120.2(c) . . . . . . . . . . . . . . . . . . . . 3

13 C.F.R. §§ 120.450-455 . . . . . . . . . . . . . . . . . . 9

### MISC.

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . 1

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RCFC 56(c) . . . . . . . . . . . . . . . . . . . . . . . . 7

INDEX TO APPENDIX

Page

Authorization and Loan Agreement . . . . . . . . . . . . . . . . 1

Guarantee Loan Purchased – Initial Purchase . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CRAIG-BUFF LIMITED PARTNERSHIP, a Nevada Limited Partnership, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-507C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the United States, pursuant to RCFC 56, respectfully requests that the Court issue summary judgment in favor of defendant.[1] In support of this motion, we rely upon the complaint, the following brief, and documents set forth in the attached appendix.

DEFENDANT'S BRIEF

STATEMENT OF THE CASE

I. Nature Of The Case

Plaintiff Craig-Buff Limited Partnership ("Craig-Buff") seeks damages in excess of $200,000 arising from an alleged breach of an alleged implied duty by the Small Business Administration ("SBA") to provide certain payoff information regarding a section 7(a) loan. Comp. ¶ 31, Prayer for Relief.

---

[1] This motion primarily seeks relief pursuant to RCFC 56, and, accordingly, is styled a motion for summary judgment. However, as discussed more fully below, a portion of plaintiff's complaint is properly dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1). The factual assertions set forth in our motion and proposed findings, which are supported by a citation to plaintiff's complaint, are assumed, solely for the purposes of this motion, to be true.

Craig-Buff also presents claims of breach of an implied duty of good faith and fair dealings and misrepresentation.[2]

II. Issues Presented

1. Whether defendant is entitled to summary judgment upon plaintiff's claim that SBA breached an implied contract to provide payoff information regarding a loan entered into between a commercial lender and Craig-Buff, a portion of which loan SBA guaranteed.

2. Whether defendant is entitled to summary judgment upon plaintiff's claim that the Government breached the covenant of good faith and fair dealing.

3. Whether this Court lacks jurisdiction to consider plaintiff's tort claim of misrepresentation.

III. Statement Of Facts

Craig-Buff was a Limited Partnership doing business in the State of Nevada. DPFUF 1. In October 1997, Craig-Buff borrowed $799,732 from AT&T Small Business Lending Corporation, now CIT Small Business Lending Corporation ("CIT"). DPFUF 2. In November 1998, Craig-Buff borrowed $654,000 from New Ventures Capital Development Company ("New Ventures"), pursuant to section 504 of the Small Business Investment Act of 1958 ("the

---

[2] "Comp. ¶ ___" refers to plaintiff's complaint. "Comp. Ex. ___" refers to exhibits attached to plaintiff's complaint. "A ___" refers to the appendix accompanying defendant's motion for summary judgment. "DPFUF ___" refers to defendant's proposed findings of uncontroverted fact.

504 program"). See 15 U.S.C. §§, 695-697(f) (authorizing development company program 504 loans); DPFUF 2. Eventually, SBA acquired both these loans and consolidated them. DPFUF 5. Plaintiff refers to these loans as "the consolidated loans," Comp. ¶ 6, and for the purposes of this motion, defendant uses the same term.

SBA established the 504 program "to foster economic development, create and preserve job opportunities, and stimulate growth, expansion, and modernization of small businesses." 13 C.F.R. § 120.800; DPFUF 3. The 504 loans typically involve projects requiring "long-term fixed-asset financing for small businesses." 13 C.F.R. § 120.2(c); DPFUF 3.

On or about October 28, 1997, Craig-Buff borrowed an additional $245,000 from CIT. DPFUF 5. Pursuant to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) (authorizing general business program loans), SBA guaranteed 75 percent of this loan. Id Plaintiff refers to this loan as "the CIT loan", Comp. ¶ 7, and for purposes of this motion defendant will use the same term.

Craig-Buff, CIT, and SBA executed an "Authorization and Loan Agreement" concerning the CIT loan, which set forth obligations of the parties pursuant to the CIT loan. DPFUF 7. The agreement contained no obligation of SBA to provide Craig-Buff payoff information regarding the CIT loan. Id., A 1. The

amount of the CIT loan subsequently was increased to $294,000. DPFUF 5.

Section 7(a) loans provide financing for general business purposes and may be either:

> (i) A direct loan by SBA;
>
> (ii) An immediate participation loan by a Lender and SBA; or
>
> (iii) A guaranteed (deferred participation) by which SBA guarantees a portion of a loan made by a Lender.

13 C.F.R. § 120.2(a); DPFUF 6.

The CIT loan was neither a direct or immediate participation loan. Rather, SBA guaranteed a portion of the CIT loan. DPFUF 7-8; see also 13 C.F.R. § 120.2(a)(iii) (where SBA issues a guaranteed loan pursuant to section 7(a), "SBA guarantees a portion of a loan made by a Lender").[3]

Both the SBA consolidated loans and the CIT loan were secured by real property and improvements located at 4620 East Russell Road, Las Vegas, Nevada. DPFUF 9. On or about April 7, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2.5 million. DPFUF 10. In early

---

[3] While the complaint makes no mention of this fact, we note that Craig-Buff defaulted on the CIT loan and CIT submitted a claim pursuant to the guarantee for 75 percent of the loan, which SBA paid. A 13. As such, both SBA and CIT held a portion of the loan. At the closing between the buyer and Craig-Buff, SBA directed the proceeds to cover the CIT loan to be paid directly to CIT. Comp. ¶ 26.

June 2004, the prospective purchaser informed Craig-Buff that it was unable to consummate the $2.5 million sale. Id.

In response to Craig-Buff's inquiry regarding the "SBA Loans," SBA informed Craig-Buff that the payoff amount for the SBA loans was $1,763,643.62. DPFUF 11. On or about July 21, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2,300,000. DPFUF 12. On or about July 22, 2004, SBA informed Craig-Buff that the payoff figure of $1,763,643.62 did not include the amount to payoff the CIT loan. DPFUF 13.

By letter dated July 27, 2004, SBA informed Nevada Title Company, the escrow agent under the purchase agreement, that the payoff amount for the SBA consolidated loans was $1,763,643.62, and the payoff amount for the CIT loan was $312,209.85. DPFUF 14. Craig-Buff proceeded with sale of the property pursuant to the agreement. DPFUF 15.

## SUMMARY OF THE ARGUMENT

Summary judgment is appropriate because Craig-Buff is not entitled to relief as a matter of law. Craig-Buff's implied-in-fact contract claim should be dismissed because there exists an express agreement (not referenced in plaintiff's complaint) between Craig-Buff, CIT, and SBA regarding the CIT loan which precludes the existence of such an implied-in-fact contract. The express agreement contains no duty or obligation that SBA

provide Craig-Buff with payoff information. Even assuming for the sake of argument the existence of such a contractual duty, the information provided by SBA was correct. According to Craig-Buff's complaint, plaintiff inquired regarding the payoff amounts for the "SBA loans," and did not specifically mention the CIT loan. SBA provided Craig-Buff correct information regarding the payoff amounts for the SBA consolidated loans.

With regard to Craig-Buff's argument that SBA allegedly breached a covenant of good faith and fair dealing, Craig-Buff's complaint fails completely to allege sufficient facts to establish a prima facie case. Indeed, Craig-Buff has failed to allege bad faith, which is an essential element of a claim that the Government violated the covenant of good faith and fair dealing.

Craig-Buff's detrimental reliance claim should be dismissed. That claim is, in actuality, based upon the tort of misrepresentation. This Court lacks jurisdiction to consider such a claim.

ARGUMENT

I. Summary Judgment Is Appropriate Here

Defendant is entitled to summary judgment. Summary disposition is appropriate where there is no genuine dispute as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States,

812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed "to secure the just, speedy and inexpensive determination of every action."'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

As the court of appeals emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' — that is, pointing out to the [Court of Federal Claims] — that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. As we discuss below, the Government is entitled to summary judgment as there is no dispute as to any material fact and defendant is entitled to judgment as a matter of law.

## II. An Express Agreement Between SBA And Craig-Buff Precludes Plaintiff's Implied-In-Fact Contract Claim

It is well-settled that "the existence of an express contract precludes the existence of an implied-in fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) (citing Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir.), cert. denied, 498 U.S. 811 (1990)); Roedler v. Department of Energy, 255 F.3d 1347, 1353-54 (Fed. Cir. 2001). This rule has been applied "to prevent parties from claiming the existence of an implied-in-fact contract to cover work that was not awarded consistent with the procedural provisions of an express contract." L.P. Consulting Group v. United States, 66 Fed. Cl. 238, 242 (2005)(citing Ruttenberg v. United States, 65 Fed. Cl. 43, 49-50 (2005) (noting that no implied-in-fact contract can exist where contract required written authorization)).[4]

Craig-Buff's complaint does not identify any express contract between the parties. Rather, Craig-Buff alleges that

---

[4] We note that Craig-Buff's complaint fails to set forth any elements necessary to establish an implied contract with the United States. The elements, which are identical for both express and implied contracts, are "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)).

"[t]he conduct of the SBA manifested an implied contract with Craig Buff." Comp. ¶ 31. Attached to this motion is a copy of the Authorization and Loan Agreement (Guaranty Loan), between the lender, AT&T Small Business Lending Corporation (now CIT), Craig-Buff, and SBA. That document sets forth the obligations of the parties pursuant to the CIT loan.[5] There simply is no obligation of SBA, express or implied, to provide to Craig-Buff payoff information regarding the CIT loan. Where the express terms of the agreement contain no such duty, Craig-Buff cannot properly claim that there exists an implied-in-fact contract that contains such a duty.

III. <u>SBA Did Not Provide Incorrect Information To Craig-Buff</u>

Based upon the specific factual allegations set forth in Craig-Buff's complaint, the SBA provided Craig-Buff correct information. According to Craig-Buff, the SBA provided payoff information to plaintiff on June 23, 2004, "in response to Craig-Buff's request for a pay off amount on all SBA Loans." Comp. ¶ 18; DPFUF 11. SBA provided information regarding the two SBA consolidated loans, that is the 504 loans which were assigned to SBA. DPFUF 4. As Craig-Buff's complaint readily

---

[5] Pursuant to its authority as a preferred lender, CIT signed the agreement for SBA. <u>See</u> 15 U.S.C. § 636(a)(2)(C)(ii) (lender pursuant to "Preferred Lenders Program" has "complete authority to make and close loans with a guarantee from the Administration without obtaining the prior specific approval of the Administration"); <u>see</u> <u>also</u> 13 C.F.R. §§ 120.450 through 120.455 (Preferred Lenders Program).

admits, there was a separate CIT loan, which plaintiff refers to as the "CIT Loan." Comp. ¶ 7; DPFUF 5. The CIT loan was issued by CIT to Craig-Buff, with the SBA guaranteeing a portion of the loan. DPFUF 5-8.

Notably, Craig-Buff does not allege in its complaint that, during the conversation with SBA, plaintiff specifically inquired about the CIT loan, or requested payoff information specifically for that loan. Certainly, as the borrower under the consolidated loans and the CIT loan, Craig-Buff had an obligation not only to maintain such records itself (regarding amounts paid and owing on its loans), but to be specific when inquiring from the SBA about the status of plaintiff's loans. This is especially true when there exists multiple loans that were made pursuant to different statutory schemes (504 and section 7(a) loans).

Assuming for the sake of argument that information provided by the SBA was incorrect, the SBA's supplying incorrect information to Craig-Buff simply does not form a proper basis for a cause of action against the United States. Office of Personnel Management v. Richmond, 496 U.S. 414, 429 (1990). In Richmond, a recipient of a federal disability annuity was provided an outdated publication incorrectly advising him that he could work without forfeiting his disability payments. 496 U.S. at 417. In rejecting the annuity recipient's claim that he

was entitled to receive his disability payments, the Supreme Court held that "the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.” 496 U.S. at 426.

The same is true here. Craig-Buff cannot properly rely upon the receipt of allegedly incorrect information from SBA as a basis for a cause of action against the United States. See also United Pacific Ins. Co. V. Roche, 401 F.3d 1362 (Fed. Cir. 2005) (rejecting application of estoppel against Government where incorrect information provided by Government was the result of unintentional error, not affirmative misconduct). Congress simply has not authorized payment of such damages under these circumstances. As established above, there is no proper contractual basis for plaintiff’s claim. Indeed, at bottom, plaintiff’s argument is one sounding in tort. As we discuss below, this Court lacks jurisdiction to consider such a claim.

Accordingly, defendant respectfully requests that judgment be entered in favor of defendant and that plaintiff’s implied-in-fact contract claim be dismissed.

IV. Defendant Is Entitled To Judgment Upon Craig-Buff’s Claim That SBA Breached The Warranty Of Good Faith And Fair Dealing

In its second claim for relief, Craig-Buff alleges that its implied-in-fact contract with SBA contained “an implied covenant of good faith and fair dealing,” Comp. ¶ 38, and that SBA

breached this implied covenant by not disclosing the balance of the CIT loan when providing plaintiff its payoff figures for the SBA consolidated loans. Comp. ¶ 39.

This Court generally possesses jurisdiction to consider a breach of covenant of good faith and fair dealing. Southern California Edison v. United States, 58 Fed. Cl. 313, 325 (2003) ("[I]n every contract there exists an implied covenant of good faith and fair dealing"). However, Craig-Buff's claim here should be dismissed as Craig-Buff fails to set forth a prima facie case of such a breach.

As noted by the Court in Southern California, "[p]roving a breach of this covenant in a government contract is frequently difficult because of the presumption that a government employee performs his or her duties in good faith." Id. To state such a claim, "plaintiffs must allege facts which if proved would constitute malice or an intent to injure." Id. (quoting Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994)).

Here, Craig-Buff fails to allege sufficient facts to establish a prima facie case. Indeed, facts contained in the complaint come nowhere near the "well nigh irrefragable proof" required to demonstrate "that the government had a specific intent to injure it." Industries v. United States, 905 F.2d 1518, 1521 (Fed. Cir. 1990); Caldwell & Santmyer, Inc. v. United

States, 55 F.3d 1578, 1581 (Fed. Cir. 1995); L.P. Consulting Group, Inc. v. The United States, 66 Fed. Cl. 238, 243 (2005).

Indeed, Craig-Buff has failed to allege any specific acts of bad faith – i.e., any specific intent on the part of the Government to injure plaintiff. Nor can Craig-Buff plausibly do so, since it has presented no plausible motive for SBA – which, by plaintiff's count, had made it possible for plaintiff to borrow $1,747,732 (Comp. ¶¶ 4, 5 and 9) – to injure plaintiff.

Moreover, "implied covenants of good faith and fair dealing are limited to assuring compliance with the express terms of the contract and can not be extended to create obligations not contemplated in the contract." Bradley v. Chiron Corporation, 136 F. 3d. 1317, 1326 (Fed. Cir. 1998). In this instance, nothing in the agreement between Craig-Buff, CIT, and SBA, or, for that matter, the Note between CIT and Craig-Buff, Comp. Ex. 1, establishes a contractual obligation by SBA to provide Craig-Buff with a payoff amount.

A violation of the implied warranty of good faith and fair dealing includes "the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." Centrex Corporation v. United States, 395 F. 3d. 1283, 1304 (Fed. Cir. 2005). An examination of the agreement between CIT, Craig-Buff, and SBA and, for that matter,

the Note between CIT and Craig-Buff reveals that the plaintiff's reasonable expectation as to the fruits of the agreement was limited to obtaining the loan of $245,000, which plaintiff concedes it received. Comp. ¶ 10. Craig-Buff's required performance pursuant to that agreement and Note was to make timely repayments of principal and interest, and plaintiff does not allege that SBA interfered with that performance. Accordingly, Craig-Buff does not assert sufficient factual elements to establish a claim that SBA violated its implied warranty of good faith and fair dealing.

Because the existing agreement among Craig-Buff and SBA does not provide for SBA to provide Craig-Buff payoff figures; because SBA's alleged failure to provide payoff figures regarding the CIT loan neither prevented plaintiff from performing its duties under the contract nor deprived plaintiff of the fruits of the contract; and because plaintiff has not pled, and cannot plead, bad faith on the part of SBA, plaintiff's second claim for relief must be dismissed.

## V. This Court Lacks Jurisdiction To Consider Craig-Buff's Claim Of Detrimental Reliance/Misrepresentation

Craig-Buff claims that, in reliance upon the payoff figures which SBA initially provided (i.e., the SBA consolidated loans), plaintiff agreed to reduce the purchase price of the property securing the loan by $200,000. Comp. ¶ 44. This Court lacks jurisdiction to consider this claim. Craig-Buff's legal theory,

which it labels "detrimental reliance," is actually a claim in misrepresentation and sounds in tort.

It is a well settled principle that the United States, as sovereign, is immune from suit, except to the extent that Congress otherwise consents. United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed". United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act waives sovereign immunity for actions "founded either upon the Constitution, or any Act of Congress or any regulation of any executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). Craig-Buff alleges that SBA misrepresented the payoff amount. "[C]laims based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort." Somali Dev. Bank v. United States, 205 Ct. Cl. 741, 749, 508 F.2d 817, 821 (1974).

Because Graig-Buff claim is based upon alleged tortious action, i.e., "misrepresentation," the Court lacks jurisdiction to consider this claim. See Smithson v. United States, 847 F.2d

791, 795 (Fed. Cir. 1988) ("any undue delay by [Farmers Home Administration] in making loan, or failure to provide alternative loans or loan servicing relief, is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction."); McCauley v. United States, 38 Fed. Cl. 250, 264 (1997) (dismissing allegations of misconduct and fraud by Government officials); DeRoo v. United States, 12 Cl. Ct. 356, 362 (1987) (dismissing claim that HUD officials negligently issued conditional commitment); see also 28 U.S.C. 2680(h) (Congress expressly has not waived sovereign immunity for claims based upon the tort of misrepresentation).

To the extent Craig-Buff's claim is characterized as a "tortious breach" of a government contract, jurisdiction likewise would not exist as Craig-Buff can establish no "direct connection between the government's contractual obligations and the alleged tortious conduct." Mega Constr. Co. v. United States, 29 Fed. Cl. 396, 478 (1993); H.H.O., Inc. v. United States, 7 Cl. Ct. 703, 706 (1985). That the alleged conduct merely relates, in a general sense, to an alleged contractual relationship between the parties is insufficient to establish jurisdiction. Mega Constr., 29 Fed. Cl. at 478.

Assuming for the sake of argument that the Court possesses jurisdiction to consider Craig-Buff's misrepresentation claim, defendant is entitled to summary judgment. Plaintiff asserts

that it sold the collateral property for $2.3 million "[d]ue to Craig Buff's reliance on the Initial Pay Off Amount." Comp. ¶ 20. However, plaintiff admits, earlier in its complaint, that it reduced the purchase price by $200,000, not because of the payoff amount, but because the prospective purchaser could not come up with the financing to pay the original price of $2.5 million. Comp. ¶ 16.

Of course, plaintiff was free to sell the property for $2.5 million regardless of the payoff amount as long as there was a willing buyer. Craig-Buff's failure to sell the property at the higher price is more closely related to the operation of the free market than it was to what plaintiff believed the payoff amount to be.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court grant defendant's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

TIMOTHY TREANOR
Small Business
Administration

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

August 26, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 26, 2005, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" and "APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON