No. 05-507C
(Senior Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CRAIG-BUFF LIMITED PARTNERSHIP,
a Nevada Limited Partnership,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

TIMOTHY TREANOR
Small Business
Administration

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

August 26, 2005

Attorneys for Defendant

INDEX TO APPENDIX

Page

Authorization and Loan Agreement . . . . . . . . . . . . . . . . . 1

Guarantee Loan Purchased - Initial Purchase . . . . . . . . . 13

AUTHORIZATION AND LOAN AGREEMENT
(Guaranty Loan)

238/6

U.S. Small Business Administration
Las Vegas District Office
Post Office Box 7527
Las Vegas, Nevada 89125

LOAN NUMBER:PLP1618324004

Lender:

AT&T Small Business Lending Corporation
5613 DTC Parkway, Suite 450
Englewood, CO 80111

Your request dated October 15, 1997 for SBA to guarantee SEVENTY FIVE PERCENT (75%) of a loan in the amount of $245,000.00 to be made by Lender to Craig-Buff Limited Partnership, 4620 E. Russell Road, Las Vegas, NV 89120 is hereby approved pursuant to Section 7a of the Small Business Act as amended.

1. THE FOLLOWING FORMS ARE HEREWITH ENCLOSED:

1.A Three copies of SBA Form 147 Note, one to be executed by the Borrower, the other two to be conformed. The original executed copy must be retained by you and one conformed copy must be sent to SBA immediately after first disbursement.

1.B Copies of the SBA Form 1050 Settlement Sheet are to be completed and executed by Lender and Borrower to reflect each disbursement. Prompt reporting of disbursements is necessary. Return the first two copies ("Denver FOD" copy and "Servicing Office" copy) to SBA at the District Office Address shown above.

1.C SBA Form 159 Compensation Agreement shall be executed by Borrower, its representative and Lender and returned to SBA if Borrower has employed an attorney, accountant or other representative, or if Borrower is charged fees for services by Lender or an associate of Lender. If no such fees have been charged, please write "None" and return the form, executed by the Lender, to SBA.

1.D The original copy of this Authorization shall be executed prior to first disbursement and retained in loan file by the Lender. Additional SBA Forms required, if any, are itemized below.

1.E SBA Form 148 - Guaranty 1 Set
1.H SBA Form 160-A - Certificate as to Partners
1.J SBA Form 641 - Request for Counseling
1.K SBA Form 722 - Equal Employment Opportunity Poster
1.L SBA Form 793 - Notice to New SBA Borrowers

2. THIS AUTHORIZATION IS SUBJECT TO:

2.A Provisions of the Guaranty Agreement between Lender and SBA, dated November 3, 1993, and any Supplemental Guaranty Agreement between Lender and SBA.

2.B.01 First disbursement of the loan being made not later than Six (6) months, and no disbursement being made later than Nine (9) months, from the date of this Authorization, unless such time is extended pursuant to prior written consent by SBA.

2.B.02 No disbursement of this loan shall be made beyond the maturity date established below, unless such time is extended pursuant to prior written consent of SBA. **(FOR LINES OF CREDIT)**

2.C Receipt by Lender of satisfactory evidence that there has been no unremedied adverse change since the date of the Application, or since any of the preceding disbursements, in the financial or any other condition of Borrower, which would warrant withholding or not making any such disbursement or any further disbursement.

2.D The representations made by Borrower in its loan application, the requirements or conditions set forth in Lender's application form, including the supporting documents thereto, the conditions set forth herein and any future conditions imposed by Lender (with prior SBA approval).

2.E Notwithstanding any other provisions of this Authorization, the Lender may use its own form(s) in lieu of standard SBA forms, provided Lender has obtained SBA's prior written consent as to specific content and format of said alternate forms. (This waiver does not apply to SBA Form 147 Note and SBA Form 148 Guaranty, which are mandatory forms.)

2.F Borrower and Guarantors, if any, acknowledge that in accordance with 13 CFR Part 101, they are not entitled to and hereby waive the right to claim or assert any immunities or defenses, including but not limited to any right of subrogation and/or contribution against SBA, which may be available under local law, to defeat, modify, or otherwise limit their obligation to repay any monies advanced by Lender to Borrower pursuant to the terms of this Loan Authorization.

2.G Lender agrees to pay an ongoing guaranty fee equal to one-half of one percent per annum on the guaranteed portion of the outstanding balance. This fee shall be paid by the lender following the receipt of a payment from the borrower. The fee may not be charged to the borrower and shall be received by the SBA-designated fiscal and transfer agent by the third day of the month (or the next business day), following receipt of a scheduled payment. This is a two business day grace period after the due date. Lender agrees to report the status of all of its SBA guaranteed loans on a monthly basis using SBA form 1502 or an acceptable electronic format.

3. REPAYMENT TERMS:

3.A. Repayment term, interest rate(s), and maturity.

Repayment terms contained in the executed SBA Form 147 Note shall conform to the following paragraphs:

3.A.03 **Note Pa ,le:** Six (6) installments of interest o. will be payable on the first day of each month following the date of this Note. Then, equal monthly installments of principal and interest in the amount of $3,341.00 will be due on the first day of each and every month thereafter, unless the amount of any installment changes pursuant hereto. The balance of principal, accrued interest and all other amounts due hereunder shall be payable on or before Ten (10) years and Five (5) months from the date of this Note. **The initial interest rate shall be Ten and Three Quarters percent (10.75%) per annum.** Each payment shall be applied first to the interest accrued to the date of receipt of said payment, and the balance, if any, to principal and then to any other amounts due hereunder, including late charges. The interest rate shall not exceed the maximum rate allowable under applicable law.

**Late Charges:** Borrower agrees to pay a late charge equal to five percent (5.0%) of the payment amount due if such payment is not received within ten (10) days of the due date.

THIS IS A VARIABLE RATE LOAN. Commencing on the first Adjustment Date (as defined below) and continuing on each Adjustment Date thereafter, the interest rate will fluctuate in accordance with the "Prime Rate" as published in the Money Rates section of *The Wall Street Journal* on such date (or if *The Wall Street Journal* is not published on such date, as published in *The Wall Street Journal* on the first business day after such date, or if no such rate is published in *The Wall Street Journal* then the prime rate as published in a national daily financial newspaper as selected by the holder of this Note (the "Holder"). The interest rate (spread) to be added to the Prime Rate at the beginning of each applicable adjustment period will be Two and One Quarter percent (2.25%) . Each adjustment period will be quarterly, beginning on the first day of the calendar quarter following the date of this Note. Adjustment periods and calendar quarters shall commence on each January 1, April 1, July 1 and October 1 (each an "Adjustment Date").

The interest rate on this Note shall increase or decrease on each Adjustment Date by adding the spread to the Prime Rate in effect as of such Adjustment Date.

Upon any changes in the interest rate, the above monthly principal and interest payment shall be adjusted to amortize the remaining principal balance in equal monthly payments of principal and interest over the remaining term of the loan.

Holder shall give written notice to the undersigned of each increase or decrease in the interest rate within thirty (30) days after the effective date of each rate adjustment; however, the fluctuation of the interest rate is not contingent on whether the notice is given and any failure of the Holder to give such notice shall not relieve the Borrower from any obligation to make any payment due under this Note.

If the undersigned shall be in default of payment due on the indebtedness herein and the Small Business Administration (SBA) purchases its guaranteed portion of said indebtedness, the rate of interest on both the guaranteed and unguaranteed portions herein shall become fixed at the rate in effect as of the date of default. If the Undersigned shall not be in default in payment when SBA purchases its guaranteed portion, the rate of interest on both the guaranteed and unguaranteed portions shall be fixed at the rate in effect as of the date of purchase by SBA.

Borrower shall provide Holder with written notice of intent to prepay part or all of this loan at least 21 calendar days prior to the prepayment date. A prepayment is any payment made ahead of schedule that exceeds twenty (20%) percent of the then outstanding principal balance before such prepayment. If Borrower makes a prepayment and fails to give at least 21 days advance notice of intent to prepay, then, notwithstanding any other provisions to the contrary in this Note or other document, Borrower shall pay Holder 21 days interest on the unpaid principal as of the date preceding such prepayment.

3.B USE OF PROCEEDS OF LOAN AS FOLLOWS:

3.B.03 Approximately $144,533.00 for construction of a car wash located at 4620 E. Russell Road, Las Vegas, NV 89120.

3.B.05 Approximately $14,453.00 to pay construction contingency.

3.B.06 Approximately $80,000.00 to purchase business machinery and equipment.

3.B.12 Approximately $1,005.00 for working capital to be disbursed as deemed necessary by Lender.

3.B.13 Proceeds not expended for purposes indicated above may be disbursed as additional working capital provided said funds do not exceed ten percent (10%) of the specific purpose authorized or $10,000, whichever is less.

3.B.15 Approximately $5,009.00 for other purposes as follows: Construction Loan Interim Interest (Disbursements of proceeds under this allocation to be made monthly by direct payment to lender without use of a joint payee check.)

3.C COLLATERAL.

3.C.03 Third Deed of Trust (including Assignment of Rents) on land and improvements owned by Craig-Buff Limited Partnership and located at 4620 E. Russell Road, Las Vegas, NV 89120, subject only to prior liens held by AT&T Commercial Finance Corporation and New Ventures Capital Development Co. with outstanding balances of approximately $799,732.00 and $655,000.00 respectively. Evidence of title and priority of lien will be based upon STANDARD TITLE POLICY. Deed of Trust must include a Due-on-Sale clause.

3.C.04 First security interest to be taken by Financing Statement and Security Agreement in all of the following personal property, now owned or hereafter acquired, wherever located, and proceeds therefrom:

3.C.04.a Machinery, Equipment, and Furniture

3.C.04.b EXCLUDING Titled Motor Vehicles

3.C.04.c Fixtures

3.C.04.d Inventory

3.C.13 Guaranty on SBA Form 148 executed by Harsh Sidhu and secured by a Fourth Deed of Trust on land and improvements located at 4537 Special Court, Las Vegas, NV 89130, subject only to prior liens held by Southwestern Mortgage and First Home Acceptance Mortgage and California Lending Group, Inc. with approximate outstanding balances of $128,150.00 and $6,000.00 and $10,000.00 respectively. Evidence of title and priority of lien will be based upon Limited Fast Policy. Deed of Trust must include a Due-on-Sale clause.

4. TO FURTHER INDUCE SBA TO GUARANTEE THIS LOAN, BORROWER AGREES TO THE FOLLOWING CONDITIONS DURING THE TERM OF THIS LOAN:

4.A Execution of all documents required in Item 1 above.

4.B Reimbursable Expenses -

Borrower will, on demand, reimburse Lender for any and all expenses incurred, or which may be hereafter incurred, by Lender from time to time in connection with or by reason of Borrower's application for, and the making and administration of the loan.

4.C Books, Records and Reports -

Borrower will at all times keep proper books of account in a manner satisfactory to Lender and/or SBA. Borrower hereby authorizes Lender or SBA to make or cause to be made, at Borrower's expense and in such manner and at such times as Lender or SBA may require, (a) inspections and audits of any books, records and paper in the custody or control of Borrower or others, relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (b) inspections and appraisals of any of Borrower's assets. Borrower will furnish to Lender for the twelve month period ending December 31, 1997 and annually thereafter (no later than 3 months following the expiration of any such period) and at such other times and in such form as Lender may prescribe, Borrower's financial and operating statements. Borrower hereby authorizes all Federal, State and municipal authorities to furnish reports of examinations, records, and other information relating to the conditions and affairs of Borrower and any desired information from reports, returns, files, and records of such authorities upon request therefore by Lender or SBA.

4.C.02 The Borrower's financial and operating statements required in Paragraph 4.C herein shall include annual financial statements compiled by an independent public accountant submitted within ninety (90) days of the close of Borrower's fiscal year.

4.C.04 If loan is not closed within 3 MONTHS month(s) from date of the Authorization, Borrower shall furnish Lender current, signed financial statements for the business, each principal and each guarantor.

4.D Borrower shall execute any contracts for managen . consulting services without prior approval of Lender.

4.E Distributions and Compensation -

A. If Borrower is a corporation, the written consent of the Lender is required to declare or pay any dividends or make any distribution upon its capital stock, or purchase or retire any capital stock.

Lender's approval is also required if a corporate borrower intends to consolidate, or merge with another company, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus or otherwise, to any company, directly or indirectly, controlling or affiliated with or controlled by corporate Borrower, or any other company, or to any officer, director or employee of Borrower, or of any such company.

B. If Borrower is a partnership or individual, Lender's approval is required to make any distribution of assets of the business of Borrower, except for reasonable compensation for services, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus or otherwise, to any partner or any of its employees, or to any company, directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

Regardless of the Borrower's structure (corporate, partnership or individual) Borrower will not, without prior consent of Lender, (a) pledge, mortgage or otherwise encumber in any manner whatsoever any of Borrower's present or after acquired property or assets, (b) borrow money or obtain a loan from any person, corporation or any other source, (c) make any investments in other business or real property, (d) make or guarantee any advances or loans made to others, (e) incorporate, if presently a partnership or sole proprietorship, and (f) sell a substantial part, or all of its assets.

4.F OTHER PROVISIONS.

4.F.02 SBA Form 147 Note shall be executed by Craig-Buff Limited Partnership (a partnership) and by Harsh Sidhu, as individuals and as general partner.

4.F.05 Borrower to execute SBA Form 159 Compensation Agreement prior to first disbursement.

4.F.06 Borrower to execute SBA Form 641 Request for Counseling prior to first disbursement.

4.F.07 Prior to first disbursement, Borrower shall provide Lender an executed copy of its Partnership Agreement and shall complete SBA Form 160A Certificate as to Partners.

4.F.08 Borrower will post in its place of business SBA Form 722 Equal Opportunity Poster where it will be clearly visible to employees, applicants for employment, and members of the general public.

4.F.09 Prior to first disbursement, the Lender must be in receipt of evidence of the kind described below from an independent authoritative source which is sufficient to indicate to the Lender that the property is not in a special hazard area. If such evidence is not provided to the Lender, the borrower must obtain, and maintain, Federal Flood Insurance or other appropriate special hazard

insurance in am :s and coverages equal to the lesser o , the insurable value of the property or (2) the maximum limit of coverage available. Evidence that required flood or special hazard insurance has been acquired may be in the form of proof of payment to any licensed insurance agent specifically relative to the required flood or hazard insurance or a copy of the required flood or hazard insurance or a copy of the required flood or hazard insurance policy which has been issued. Borrower will not be eligible for either any future disaster assistance or SBA loan assistance if this flood or hazard insurance is not maintained as stipulated herein throughout the entire term of this loan.

As evidence that the property is not located within a special hazard area subject to flooding, mudslides, erosions or earthquakes, the Lender may rely on a determination of flood zone or special hazard area status by the applicant's property & casualty company, real estate appraiser, title insurance company, a local government agency or other authoritative source approved by SBA which would ordinarily have knowledge of the special hazard area status for the property being finance.

4.F.10 Borrower and/or owners of the collateral shall provide and maintain fire, lightning and extended coverage for the maximum insurable amount on all real and personal property taken as collateral, naming Lender as Mortgagee or Loss Payee and providing that the interests of the Mortgagee or Loss Payee shall not be impaired or invalidated by an act or neglect of the owner/insured. Insurance policy shall refer to the SBA loan number.

4.F.23 Prior to first disbursement, Lender is to be in receipt of evidence of injection of at least $102,513.00 by Borrower for use as follows: Building Improvements, Franchise Fee, Construction Fees, Miscellaneous closing costs.

4.F.26 Prior to or at the time of the first disbursement, Borrower shall provide Lender with satisfactory evidence that it is duly licensed.

4.F.33 Borrower certifies that subject firm will occupy, at all times during the term of this loan, more than 50% of the square footage of building(s) purchased with the proceeds of this loan.

4.F.39 Prior to commencement of construction and prior to any disbursement on account of the loan, the following are required:

4.F.39.a Borrower must submit final plans and specifications for review by Lender. Plans may not be changed thereafter without prior written approval of Lender and, if applicable, corporate surety in writing.

4.F.39.b Borrower must submit evidence of Builder's Risk and Worker's Compensation insurance to be carried by the contractor.

4.F.39.c Borrower must furnish a copy of a firm construction contract from an acceptable contractor at a specified price not to exceed $144,533.00, including a provision that no material changes in the approved plans and specifications will be ordered or permitted without prior written consent of Lender and, if applicable, of the surety company issuing the surety bond.

4.F.39.d Borrower and cc ıctor must execute SBA Form 601, Apţ ınt's Agreement of Compliance.

4.F.39.e Borrower must execute Note and Deed of Trust in favor of Lender with Deed of Trust to be filed of record prior to commencement of any construction.

4.F.39.f Proceeds of this loan for the purpose of construction to be disbursed upon completion of construction or in accordance with terms of construction contract. If disbursed on the basis of progress payments, each disbursement must pay all construction costs to date of contractor's invoice, less ten percent (10%) retainage to be disbursed upon completion of the contract.

4.F.39.g Inspections must be made by qualified individuals, prior to all progress disbursements.

4.F.39.h Prior to any disbursement on account of the loan, Lender to be in receipt of evidence satisfactory to Lender that proceeds will complete payment in full of the cost of construction and that no unpaid labor or material liens will exist. Prior to any disbursement of construction funds, lien waivers must be obtained from all contractors, subcontractors and any independent workers involved in the construction. A lien-free endorsement from the title company involved also must be obtained.

4.F.39.i Any overruns in construction cost will be paid by the Borrower.

4.F.39.j The construction, when completed, will conform to all state and local building, zoning, and sanitary codes.

4.F.39.k All new facilities shall be designed and constructed to be readily accessible to and usable by handicapped persons in accordance with the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., which is incorporated by reference, and as required by local building code. The standards cited above are the minimum acceptable standards for accessibility purposes.

4.F.39.l In the construction of a new building or an addition to a building, the construction must conform with the "National Earthquake Hazards Reduction Program Recommended Provisions for the Development of Seismic Regulations for New Buildings." Compliance with these requirements shall be evidenced by a certificate issued by a licensed building architect, construction engineer or similar professional, or a letter from a state or local government agency stating that the issuance of an occupancy permit is required and is subject to conformance with building codes and that the local building codes include the Seismic standards.

4.F.40 Prior to any disbursement, Borrower must have spent not less than $55,000.00 of Borrower's own funds toward the new construction.

4.F.41 Lender may charge the Borrower a one-time fee not to exceed two percent (2%) of the portion of the loan designated for construction. Said fee may not exceed the added costs to the Lender generated by the handling of the construction.

4.F.45 Lender to remit its check for the SBA guaranty fee in the amount of $5,512.50, to SBA within 90 days from the date of this Authorization and Loan Agreement. The check identified by the SBA loan number, must be forwarded to the U.S. Small Business Administration, P.O. Box 748,

Denver, Colora 80259. Lender may require reimb ement of the above fee from the Borrower; provided, however, that the Lender has paid such fee to SBA and the charge to the Borrower is not made prior to Lender's first disbursement on this loan. The fee may be part of the loan proceeds.

4.F.46 Prepayment penalty fees as a condition to this loan are prohibited.

4.F.47 Such other terms and conditions which Lender may set forth which are not inconsistent with the provisions of this Authorization.

4.F.48 Borrower certifies that at the time it submitted its Loan Application it was and shall continue to be current on all Federal and State withholding taxes, payroll taxes, sales taxes, and similar funds held in trust.

4.F.50 Borrower acknowledges and understands that the funding of this loan is conditioned upon the real property offered as collateral ("the Property") being free from contamination by any Hazardous Substance and that if such contamination is present or reasonably appears to be present, the loan may be funded or canceled at any time in the sole discretion of Lender and/or SBA. If the loan is canceled in whole or in part, Borrower agrees to release Lender and/or SBA from all liability. As used in this Loan Authorization, the term "contamination" means the presence of any Hazardous Substance at a level in excess of that permitted or allowed by local, state or federal laws and regulations.

4.F.50.a For purpose of this Loan Authorization, the term "Hazardous Substance" means (i) any substance, product, waste or other material of any nature whatsoever which is or becomes listed, regulated, or addressed pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C § 9601, et seq. ("CERCLA"); the Hazardous Materials Transportation Act, 49 U.S.C. § 1801, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"); the Toxic Substances Control Act, 15 U.S.C. Sub-section 2601 et seq.; the Clean Water Act, 33 U.S.C. Sub-section 1251 et seq.; all as amended, or any other federal, state or local statute, law, ordinance, resolution, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance, or material, as now or at any time hereafter in effect. (ii) any substance, product, waste or other material of any nature whatsoever which may give rise to liability under any of the above statutes or under any statutory or common law theory based on negligence, trespass, intentional tort, nuisance or strict liability or under any reported decisions of a state or federal court, (iii) petroleum or crude oil other than petroleum and petroleum products which are contained within regularly operated motor vehicles, and (iv) asbestos.

4.F.51 Borrower represents, warrants and acknowledges that: (1) at the time it submitted its loan application it was and shall continue to be in compliance with all local, state, and federal laws and regulations pertaining to Hazardous Substances; (2) Borrower has no knowledge of any contamination from Hazardous Substances of any real or personal property pledged as collateral for this loan which is in violation of any such laws and regulations; (3) Borrower assumes full responsibility for all costs incurred in any clean-up involving Hazardous Substances and agrees to indemnify Lender and SBA against payment of any such costs (Borrower may be required by Lender and/or SBA to execute a separate indemnification agreement); (4) until full repayment of the loan, Borrower shall promptly notify Lender and SBA if it knows, suspects or believes there

may be any Haz ous Substance in or around the real pr rty securing this loan or if Borrower and/or such property are subject to any investigation by any Governmental agency pertaining to any Hazardous Substance.

4.F.52 Prior to first disbursement, Lender shall make a field visit to the site of all commercial real estate to be taken as collateral and shall obtain from Borrower (and owner if the loan is for the purchase of real estate) an executed Environmental Questionnaire and Disclosure Statement. Lender shall review the Statement and determine whether there is reason to believe that Hazardous Substances are present on the Property. If Lender makes such a determination, it shall advise SBA before any disbursement of loan proceeds. At the sole discretion of SBA and/or Lender, Borrower may be required to obtain a Phase I Environmental Risk Site Assessment on the Property satisfactory to Lender and SBA.

4.F.53 Prior to first disbursement, Lender shall obtain a Phase I Environmental Risk Site Assessment indicating to the satisfaction of Lender and SBA that the Property is free from contamination by any Hazardous Substance.

4.F.54 Prior to first disbursement, Borrower shall provide Lender with evidence that all underground storage tanks located on and/or to be placed on Borrower's premises have received permits issued by the appropriate local agency..

4.F.55 Prior to first disbursement, Borrower shall provide Lender with a copy of the most recent local agency inspection report or special inspection report on all underground storage tanks located on Borrower's premises. If the most recent such report is more than 12 months old, a tank integrity test must be performed on each tank by a state licensed tank tester. The results of any such test must be satisfactory to the local city or county agency or the Nevada Environmental Protection Agency, as applicable.

**PRIOR TO FIRST DISBUREMENT, VERIFICATION FROM THE IRS THAT TAX RETURNS SUBMITTED BY BORROWER WITH THE APPLICATION FOR THIS LOAN CONFORM TO THE RETURNS FILED WITH THE IRS FOR THE FOLLOWING ENTITIES AND YEARS:**

**Borrower's execution of this Authorization & Loan Agreement constitutes a certification that no individual with a 50% or more ownership interest in Borrower is more than 60 days delinquent under any administrative order, court order, or repayment agreement between the individual and a custodial parent or state or local governmental agency providing child support enforcement services that requires the individual to pay child support as defined in § 462(b) of the Social Security Act.**

5. PARTIES AFFECTED.

This Agreement shall be binding upon Lender, Borrower and each of their successors and assigns. No provision stated herein shall be waived without the prior written consent of SBA.

SMALL BUSINESS ADMINISTRATION

Administrator: AIDA ALVAREZ

**"As an agent for and on behalf of the U.S. Small Business Administration"**

**AT&T Small Business Lending Corporation**

**By:** [signature] 10-15-97

**Date**

In consideration of the SBA guaranty of the loan to be advanced by Lender to Borrower, the undersigned hereby acknowledge that they have received a copy and understand the terms and conditions of this Loan Authorization, and agree to perform in accordance therewith.

LENDER

Name: AT&T SMALL BUSINESS LENDING CORPORATION

By: [signature]

Title: **Pamela K. Scott, Assistant Vice President**

Date: 11-14-97

BORROWER

Craig-Buff Limited Partnership

By: [signature]

Harsh Sidhu, General Partner

Guarantor: [signature]

Harsh Sidhu

(Revision 3.1 - 12/93) **0011**

NOTE:

(1) Corporate applicants and/or Guarantors must execute this Authorization, in corporate name, by duly authorized officer, and seal may be affixed and duly attested; partnership applicants must execute in firm name, together with signature of a general partner.

U. S. SMALL BUSINESS ADMINISTRATION
GUARANTY LOAN PURCHASED--INITIAL PURCHASE

DATE: 03/25/03
TIME: 12:11

LOAN NUMBER: 16183340-04
BORROWER: TURTLE STOP
1128 STATUS: 06: INPUT TO LOAN ACCOUNTING
LENDING BANK: CIT SMALL BUSINESS LENDING CORPO
1 CIT DRIVE
LIVINGSTON NJ 07039

CONTROL NUMBER: 73581
SERVICING OFFICE: 0944
ENTERED BY OFFICE: 0944

BANK INTEREST RATE: 9.250
LOAN WILL BE SERVICED BY: 2: BANK
DATE OF OLDEST UNCURED DEFAULT: 07/01/01
DATE ADDTL DOCS REQ BY SBA: 11/04/02
327 NUMBER: 03 327 DATE: 02/26/03

SBA PERCENT OF LOAN: 75.000
SERVICING FEE PERCENT: 0.000
DATE USER'S DEMAND RECEIVED: 10/18/02
DATE ADDTL DOCS REC BY SBA: 02/25/03
SECONDARY BANK? NO

BUY MORE DAYS OF INTEREST THAN STANDARD? NO
327 AUTHORIZING THIS: 00 DATE: 00/00/00
REFUND ALL PRINCIPAL AND/OR INTEREST WITHHELD UPON PAYMENT IN FULL? YES
LEGAL EXPENSE: 0.00
WORKOUT AMT TO DEDUCT: PRINCIPAL: 0.00 INTEREST: 0.00
DATE PURCHASED: 02/27/03
INT.PD.THRU DT.(BY BORROWER):07/16/02

**************************************************************************

| | **GROSS** | **SBA SHARE** |
|---|---|---|
| PRINCIPAL PURCHASED: | 272,997.03 | 204,747.77 |
| INTEREST ACCRUED: | 15,635.62 | 11,726.72 |
| TOTAL PRIN. & INT. DISALLOWED: | | 5,500.14 |
| PURCHASE INTEREST ADJUSTMENT: | | 673.15 |
| NET DISBURSEMENT TO PAYEE: | | 210,301.20 |

********************** LOAN INSTALLMENT INFORMATION **********************
INSTALLMENT TYPE: F: FIXED INSTALLMENT FREQ: M: MONTHLY AMT: 2,629.00
FREQ.TABLE: 1 1 1 1 1 1 1 1 1 1 1 1
NEXT INSTALL.DUE: 07/01/01 MATURITY DATE: 03/29/09
FINANCIAL STATEMENT FREQUENCY: : SERV.GROUP: 0
UCC REFILING FREQUENCY: 00 DATE: 00/00/00
DATE: 00/00/00
********************** WIRE TRANSFER BANK INFORMATION **********************
BANK A: BANK TO RECEIVE WIRE TRANSFER:
CHASE MANHATTAN BANK NEW YORK NY
CONTACT NAME: DORIS RAUSCH PHONE: 800-453-3548
WIRE TRANSFER NUMBER: 021000021 ACCOUNT NUMBER: 323-891616
ADDITIONAL INFORMATION: CITSBLC-NADINE VYSLOSKY
BANK B: BANK TO WHICH PAYMENT WILL BE FURTHER CREDITED IF DIFFERENT FROM (A):

BANK C: BANK WHICH WILL BE THE FINAL PAYEE, IF DIFFERENT FROM (A) AND (B):
**************************************************************************
FUND SYMBOL: 73X4149 DISB.SCHED.NUMBER: G3659 DATE DISBURSED: 02/27/03

RECOMMENDING OFFICIAL: HAMILTON
SIGNATURE DATE: 02/26/03

APPROVING OFFICIAL: ERECKSON
PHONE: 702-388-6672
SIGNATURE DATE: 02/26/03