No. 05-507C
(Senior Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CRAIG-BUFF LIMITED PARTNERSHIP,
a Nevada Limited Partnership,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

GORDON & SILVER, LTD.
ERIC R. OLSEN, ESQ.
3960 Howard Hughes Parkway, 9th Fl.
Las Vegas, Nevada 89109
Tel: (702) 796-5555
Fax: (702) 369-2666

Attorneys for Plaintiff

TABLE OF CONTENTS

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** ....... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................ 1

**I. INTRODUCTION** ........................................ 1

**II. STATEMENT OF FACTS** ........................................ 1

**III. LEGAL ARGUMENT** ........................................ 4

A. **Summary Judgment Standard** ........................ 4

B. **Summary of SBA's Arguments** ........................ 5

C. **SBA Has Failed to Establish a Legal Theory as a Matter of Law and Genuine Issues of Material Fact Exist Such That Summary Judgment Should Be Denied** ........................ 5

1. **Even if an express agreement exists rather than an implied-in-fact-agreement, Craig-Buff may still recover** .................. 5

2. **Craig-Buff may recover for SBA's failure to provide correct payoff information** ............. 8

3. **SBA's intent behind its failure to disclose the correct payoff information is a question of fact** ................................ 9

4. **This Court has jurisdiction to consider Craig-Buff's claim for detrimental reliance** ...... 11

IV. **CONCLUSION** ........................................ 13

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

# TABLE OF AUTHORITIES

## FEDERAL CASES


Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 249-255 (1986) . . . . . . . . . 4,5

Burnside-Ott Aviation Training Center v. Dalton
107 F.3d 854, 860 (Fed. Cir. 1997) . . . . . . . . . 6

Childers v. Pumping Systems, Inc.
968 F.2d 565, 571 (5th Cir. 1992) . . . . . . . . . 6

Clicks Billiards, Inc. v. Sixshooters, Inc.
251 F.3d 1252, 1257 (9th Cir. 2001) . . . . . . . . . 5

Continental Bank, N.A. v. Everett
964 F.2d 701, 705 (7th Cir. 1992) . . . . . . . . . 10

Eastman Kodak Co. v. Image Technical Servs., Inc.
504 U.S. 451, 456 (1992) . . . . . . . . . 4

Ellison v. Robertson
357 F.3d 1072, 1075 (9th Cir. 2004) . . . . . . . . . 5

Ethican, Inc. v. United States Surgical Corp.
135 F.3d 1456, 1466 (Fed. Cir. 1998) . . . . . . . . . 6

Ferry v. Hayden
954 F.2d 658, 661-62 (11th Cir. 1992) . . . . . . . . . 11

G.L. Christian & Associates v. United States
312 F.2d 418, 423 (Ct. Cl. 1963) . . . . . . . . . 9

Heckler v. Community Health Services of Crawford County, Inc.
467 U.S. 51, 60 (1984) . . . . . . . . . 12

Industrias Magromer Cueros y Pieles, S.A. v. Louisiana Bayou Furs, Inc.
293 F.3d 912, 921 (5th Cir. 2002) . . . . . . . . . 11

Inner City Broadcasting Corp. v. Cardenas
554 F.Supp. 42, 47 (D.C. D.C. 1982). . . . . . . . . . 11

National Basketball Ass'n v. SDC Basketball Club, Inc.
815 F.2d 562, 569 (9th Cir. 1987) . . . . . . . . . 10

Office of Personnel Management v. Richmond
496 U.S. 414, 419 (1990) . . . . . . . . . 9, 12




GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

Postlewaite v. McGraw-Hill Inc.
411 F.3d 63, 67 (2d Cir. 2005) .......................................... 10

Ryder Truck Rental, Inc. v. Central Parking Co.
341 F.2d 321, 323 (10th Cir. 1965) .................................. 6

Stern v. Dunlap Co.
228 F.2d 939, 942 (10th Cir. 1955) .................................. 6

Stokes v. Georgia-Pacific Corp.
894 F.2d 764, 770 (5th Cir. 1990) .................................. 11

United Pacific Ins. Co. v. Roche
401 F.3d 1362 (Fed. Cir. 2005) .................................. 9

United States v. Nickel
243 F.2d 924, 927 (10th Cir. 1957) .................................. 6

U.S. v. Basin Elec. Power Co-op
248 F.3d 781, 790 (Fed. Cir. 2001) .................................. 10

FEDERAL STATUTES

F.R.C.P. 56 .......................................................... 5

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CRAIG-BUFF LIMITED PARTNERSHIP, a Nevada Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-507C<br>(Senior Judge Merow) |

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Craig-Buff Limited Partnership ("Craig-Buff"), by and through its counsel of record, the law firm, Gordon & Silver, Ltd., hereby opposes the Defendant United States Small Business Administration's ("SBA") Motion for Summary Judgment.

This Opposition is made and based upon the following Memorandum of Points and Authorities, any attachments thereto, and the papers and pleadings already on file herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

The plaintiff, Craig-Buff, seeks damages against the SBA based upon the SBA's providing incorrect payoff information concerning Craig-Buff's SBA guaranteed loans. The complaint alleges claims for damages in excess of $200,000 based upon breach of implied contract, breach of covenant of good faith and fair dealing, and detrimental reliance. Based upon the SBA's acknowledgment of an express agreement, made in the motion for summary judgment, Craig-Buff also seeks leave to amend and add a claim for breach of express contract.

**II**

**STATEMENT OF FACTS**

These facts are not disputed:

On or about October 1997, Craig-Buff, a Nevada limited partnership, executed a

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

Promissory Note in favor of CIT Small Business Lending Corporation, successor in interest to AT&T Small Business Lending Corporation ("CIT"), an SBA preferred lender, in the principal amount of Seven Hundred Ninety-nine Thousand, Seven Hundred Thirty-two and 00/100 Dollars ($799,732.00), which the SBA guaranteed (the "AT&T Loan"). On or about November 1998, Craig-Buff executed a Promissory Note in favor of New Ventures Capital Development Company ("New Ventures"), an SBA preferred lender, in the principal amount of Six Hundred Fifty-four Thousand and 00/100 Dollars ($654,000.00), which the SBA guaranteed (the "New Ventures Loan"). The AT&T Loan and the New Ventures Loan were subsequently assigned to the SBA, which consolidated and serviced both loans (the "Consolidated Loans").

On or about October 28, 1997, Craig-Buff executed a Promissory Note (the "CIT Note") in favor of CIT in the principal amount of Two Hundred Forty-five Thousand and 00/100 Dollars ($245,000.00), which the SBA guaranteed (the "CIT Loan" and together with the Consolidated Loans, the "SBA Loans"). A true and correct copy of the CIT Note is attached hereto as Exhibit "1". Craig-Buff, CIT and SBA executed an Authorization and Loan Agreement ("Loan Agreement") concerning the CIT loan, which set forth the obligations of the parties pursuant to the CIT loan. A true and correct copy of the Loan Agreement is attached as Exhibit "2". Pursuant to the terms of the Loan Agreement, among other obligations, Craig-Buff was obligated to make timely payments on the loan amount and at all times maintain proper books concerning the account with Lender and SBA. (Loan Agreement, ¶ 4.C).

Craig-Buff subsequently made a request to the SBA for an increase in the principal amount of the CIT Loan. The SBA approved Craig-Buff's request and the principal amount of the CIT Loan was increased to Two Hundred Ninety-four Thousand and 00/100 Dollars ($294,000.00). A true and correct copy of the SBA's approval letter is attached hereto as Exhibit "3".

The principal amount on the CIT Loan was disbursed to Craig-Buff by the SBA in several installments as noted on the U.S. Small Business Administration Settlement Sheets (the "Settlement Sheets"), attached hereto as Exhibit "4". The Settlement Sheets indicate that the SBA is to "participate in the loan," that the Settlement Sheets are to be returned to the SBA, and



GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

that Craig-Buff is to contact the SBA with any questions concerning the CIT Loan. Craig-Buff made payments on the SBA Loans directly to the SBA. Any payments on the CIT Loan were made to the SBA. CIT would then recover any payments due them from the SBA.

The SBA Loans were secured by that certain real property together with all improvements located in Clark County, Nevada and commonly known as 4620 East Russell Road, Las Vegas, Nevada (the "Property").

On or about April 7, 2004, Craig-Buff, as seller, entered into that certain Purchase and Sale Agreement (the "Purchase Agreement") with a third-party buyer (the "Buyer") for the sale of the Property in the amount of Two Million, Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "Purchase Price"). From the proceeds of the sale, Craig-Buff was to pay off the SBA Loans as well as several security deposits required by the Lease Agreement, totaling Seventy Thousand, Eight Hundred and 00/100 Dollars ($70,800.00).

The Buyer notified Craig-Buff in early June of 2004 that it was unable to fulfill all of the conditions precedent to the Closing under the Purchase Agreement due to the Buyer's inability to obtain financing for the Purchase Price of the Property. On or about June 23, 2004, in response to Craig-Buff's request for a pay off amount on all SBA Loans, the SBA indicated to Craig-Buff that the total pay-off amount on all SBA Loans was One Million, Seven Hundred Sixty-three Thousand, Six Hundred Forty-three and 62/100 ($1,763,643.62) (the "Initial Pay Off Amount").

In reliance on the SBA's Initial Pay Off Amount for all of the SBA Loans, Craig-Buff and the Buyer began negotiations to amend the Purchase Price of the Property under the Purchase Agreement. On or about July 19, 2004, Craig-Buff contacted the SBA and confirmed the Initial Pay Off Amount on all SBA Loans.

Craig-Buff and the Buyer entered into that certain First Amendment to Purchase and Sale Agreement (the "First Amendment") on or about July 21, 2004, reducing the Purchase Price of the Property to Two Million, Three Hundred Thousand and 00/100 Dollars ($2,300,000.00) (the "Amended Purchase Price"), a decrease of Two Hundred Thousand and 00/100 Dollars ($200,000.00).

On or about July 22, 2004, the SBA contacted Craig-Buff to indicate that the SBA had

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

omitted the CIT Loan in its Initial Pay Off Amount and as such, the Initial Pay Off Amount included only the Consolidated Loans. Accordingly, the SBA represented to Craig-Buff that the true pay-off amount for the SBA Loans was Three Hundred Twelve Thousand, Two Hundred Nine and 85/100 Dollars ($312,209.85) more than the Initial Pay Off Amount.

The SBA forwarded Nevada Title Company, the escrow agent under the Purchase Agreement (the "Escrow Agent"), a written pay-off demand on or about July 27, 2004, indicating that the pay-off amount on the Consolidated Loans was One Million, Seven Hundred Sixty-three Thousand, Six Hundred Forty-three and 62/100 Dollars ($1,763,643.62) and that the pay-off amount on the CIT Loan was Three Hundred Twelve Thousand, Two Hundred Nine and 85/100 Dollars ($312,209.85). A true and correct copy of the written pay-off demand is attached hereto as Exhibit "5". Thus, according to the written pay-off demand from the SBA, the total pay-off amount on the SBA Loans was Two Million, Seventy-five Thousand, Eight Hundred Fifty-three and 47/100 Dollars ($2,075,853.47) (the "Revised Pay Off Amount"). See Exhibit "5".

Although the Revised Pay Off Amount would result in little to no proceeds to Craig-Buff upon Closing, Craig-Buff was forced to proceed with the Closing or face potential liability, including claims for specific performance and the Buyer's damages resulting from penalties incurred as a result of its failure to timely exchange property pursuant to Section 1031 of the Internal Revenue Code, 26 U.S.C. §1 et seq. Due to Craig-Buff's reliance on the Initial Pay Off Amount, the proceeds from the Closing did not cover Craig-Buff's disbursements, including the security deposits due under the Lease Agreement.

## III

## LEGAL ARGUMENT

### A. Summary Judgment Standard

At the summary judgment stage "[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-255 (1986). At the summary judgment phase, the court views all facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S.





GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

451, 456 (1992); Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001). The movant bears the initial burden to affirmatively demonstrate that, with respect to every essential issue of each count in the compliant, there is no genuine issue of fact. F.R.C.P. 56; Ellison v. Robertson, 357 F.3d 1072, 1075 (9th Cir. 2004). A genuine issue of fact is one that could reasonably be resolved in favor of either party. Anderson, 477 U.S. at 256.

As set forth below, SBA has failed to establish the lack of a genuine issue of fact to be determined at trial. SBA's motion for summary judgment should therefore be denied.

**B. Summary of SBA's Arguments**

SBA raises three arguments. First, SBA alleges that an express agreement, rather than an implied-in-fact contract exists between Craig-Buff and SBA. SBA asserts that based on the express contract, there is no duty or obligation that SBA provide Craig-Buff with payoff information. Second, SBA argues that Craig-Buff failed to establish a prima facie case for breach of the implied covenant of good faith and fair dealing, because Craig-Buff has not shown bad faith on the part of SBA in supplying the incorrect payoff amount to Craig-Buff. Lastly, SBA argues that Craig-Buff's claim for detrimental reliance is really a claim for misrepresentation, which sounds in tort and should be dismissed because this Court lacks jurisdiction to consider a tort claim. Summary judgment based on each of the arguments should be denied.

**C. SBA Has Failed to Establish a Legal Theory as a Matter of Law and Genuine Issues of Material Fact Exist Such That Summary Judgment Should Be Denied.**

**1. Even if an express agreement exists rather than an implied-in-fact agreement, Craig-Buff may still recover.**

SBA argues that Craig-Buff's first cause of action for breach of implied-in-fact contract should be dismissed because an express agreement between SBA and Craig-Buff precludes such a claim.[1] Assuming *arguendo*, that an express agreement exists between SBA and Craig-Buff,

[1] It is important to note that at the onset of this dispute, SBA maintained the position that it was not responsible for the servicing of the CIT loan, but rather that all issues should be addressed directly to CIT because no agreement existed between SBA and Craig-Buff. Now that SBA has admitted there is an express agreement between Craig-Buff and SBA, Craig-Buff respectfully request leave to amend its Complaint in order to add a claim for breach of express contract, as an alternative theory of recovery. (SBA essentially admitted an implied-in-fact contract exists between SBA and Craig-Buff by noting that the elements necessary to establish an express or implied-in-fact con-

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

Craig-Buff is still entitled to recovery because SBA breached its obligations under the express agreement.

If possible, a court should view a single provision of a contract in a way that gives meaning to it. Ethican, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1466 (Fed. Cir. 1998). Additionally, a court must interpret a contract as a whole in a manner that gives a reasonable meaning to all its parts. Burnside-Ott Aviation Training Center v. Dalton, 107 F.3d 854, 860 (Fed. Cir. 1997). Furthermore, "the court may imply an obligation with respect to which a contract is silent when a consideration of the whole of its parts admits of no other reasonable construction." Ryder Truck Rental, Inc. v. Central Parking Co., 341 F.2d 321, 323 (10th Cir. 1965), citing, United States v. Nickel, 243 F.2d 924, 927 (10th Cir. 1957).

> "But if it is clear from all the pertinent parts or provisions of the contract, taken together and considered in the light of the facts and circumstances surrounding the parties at the time of its execution that the obligation in question was within the contemplation of the parties or was necessary to carry their intention into effect, it will be implied and enforced."

Ryder Truck Rental, 341 F.2d at 323, citing, Stern v. Dunlap Co., 228 F.2d 939, 942 (10th Cir. 1955). Lastly, where a contract presents an ambiguity, "the granting of a motion for summary judgment is improper because the interpretation of the instrument is a question of fact." Childers v. Pumping Systems, Inc., 968 F.2d 565, 571 (5th Cir. 1992).

In the present case, as asserted by SBA, the express Loan Agreement between SBA and Craig-Buff sets forth the obligations of the parties pursuant to the CIT loan. (Defendant's Motion, p. 9). SBA incorrectly argues that since the Loan Agreement is silent as to SBA's obligation to provide payoff information regarding the CIT loan, SBA did not have an obligation to provide payoff information to Craig-Buff. However, as case law indicates, mere silence will not preclude an obligation that is otherwise reasonably inherent in a contract.

Based on the terms of the Loan Agreement, Craig-Buff had the obligation to make timely

(continued)

tract are identical.)

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

payments in the proper amount on the loan, notify the SBA of intent to prepay part of or all of the loan, reimburse SBA for any expenses incurred in the making and administration of the loan, and maintain accurate account records relating to Craig-Buff's financial condition. (Loan Agreement, ¶¶3.A.03; 4.B; 4.C). A reasonable interpretation of these various provisions includes an obligation on the part of SBA to provide payoff information to Craig-Buff. When read as a whole, an implied obligation on the part of SBA to provide payoff information is especially reasonable given the fact that Craig-Buff could not properly fulfill its obligations under the Loan Agreement without payoff information. Certainly, Craig-Buff, as borrower, cannot be expected to fulfill its various obligations of making timely payments and keeping accurate account records without having information about the actual payoff amount of the CIT loan. In fact, SBA readily admits that, "Craig-Buff had an obligation…to maintain records itself (regarding amounts paid and owing on its loans)." (Defendant's Motion, p. 10).

SBA cannot claim a continuing obligation by Craig-Buff to maintain accurate records concerning payoff amounts without recognizing its own continuing obligation to provide such payoff information to Craig-Buff. Even though the Loan Agreement does not expressly provide that SBA has a duty to provide accurate payoff information, a reasonable interpretation of the contract as a whole dictates recognition of an inherent duty upon SBA to provide such information. This is especially true in light of Craig-Buff's obligations to make timely payments and keep accurate records, and the Settlement Sheets, which provide that any questions concerning the CIT loan should be directed to SBA. (Settlement Sheets). Therefore, since it was within the reasonable contemplation of the parties that SBA would necessarily have an obligation to provide Craig-Buff with payoff information so that Craig-Buff could carry out its obligations to SBA, a duty on the part of SBA should be implied and enforced.

At best, there is ambiguity surrounding the issue of whether the Loan Agreement imposed an obligation upon SBA to provide payoff information such that a question of fact exists. Since a genuine issue of material fact exists as to SBA's obligation to provide Craig-Buff with payoff information, summary judgment on this issue should be denied.

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

**2. Craig-Buff may recover for SBA's failure to provide correct payoff information.**

SBA argues that it provided Craig-Buff with correct payoff information and therefore, there is no material issue of fact regarding Craig-Buff's breach of the Loan Agreement. SBA's argument, however, is without merit.

It is undisputed that SBA initially told Craig-Buff that the payoff amount of all of its SBA loans was $1,763,643.62. (Defendant's Motion, p. 5). However, on or about July 22, 2004, the SBA contacted Craig-Buff to indicate that the SBA had omitted the CIT loan in its initial payoff amount and that the true payoff amount was $2,075,853.47, which was $312,209.85 more than the initial payoff amount provided by SBA. (Defendant's Motion, p. 5). Even though SBA clearly provided an incorrect amount, SBA argues that since Craig-Buff did not specifically inquire about the CIT loan, SBA did in fact provide correct information because it provided the payoff information on the two consolidated SBA loans.

This argument is completely without merit given the fact that SBA, on its own volition, contacted Craig-Buff when the SBA realized its own error. (Defendant's Motion, p. 5). If the SBA's argument were right, then there would have been no need for SBA to later contact Craig-Buff and correct its initial payoff amount because, based on SBA's argument, there was nothing to correct. However, SBA did contact Craig-Buff, and it did so because it realized it made a mistake in failing to include the CIT loan in its payoff amount. SBA understood Craig-Buff's request to mean both consolidated loans and the CIT loan, thus the need for it to correct its mistake.

Moreover, SBA serviced both the consolidated loans and the CIT loan. Not only was the principal amount on the CIT loan disbursed to Craig-Buff by the SBA, but also all payments on the CIT loan were made directly to SBA. Clearly, Craig-Buff's request for the payoff amount of *all* SBA loans included both the consolidated loans and the CIT loan; any other interpretation was unreasonable. Since there is a material issue of fact regarding SBA's failure to provide correct payoff information, summary judgment on this issue should be denied.

Alternatively, SBA argues that even if this court finds that SBA provided incorrect infor-

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

mation, SBA's failure to provide correct information is not actionable. SBA cites two cases in support of its proposition that Craig-Buff cannot recover money damages based on the government's failure to provide correct payoff information. See, Office of Personnel Management v. Richmond, 496 U.S. 414 (1990); United Pacific Ins. Co. v. Roche, 401 F.3d 1362 (Fed. Cir. 2005). However, the cases cited by SBA are completely inapplicable to the facts of the instant case. Specifically, both cases cited by SBA involve a claim for equitable estoppel, not a breach of contract. Since SBA admits that an express agreement exists between it and Craig-Buff, Craig-Buff's claim against SBA invokes a breach of contract theory, rather than the doctrine of equitable estoppel.

Moreover, at no time has Craig-Buff raised a claim for equitable estoppel, rather Craig-Buff asserts that a valid contract exists between it and SBA such that SBA is liable for breach of contract. It is well-settled that

> "When the Government enters into a contract, it has rights and it ordinarily incurs responsibilities similar to those of a private person who is a party to a contract...and if the Government [breaches]...the Government becomes liable for all the damages resulting from the wrongful act."

G.L. Christian & Associates v. United States, 312 F.2d 418, 423 (Ct. Cl. 1963). Additionally, in a breach of contract case, the "objective is to put the injured party in as a good a position pecuniarily as he would have been in if the contract had been [properly] performed." Id. at 423. Since SBA breached its obligations under its express agreement with Craig-Buff, Craig-Buff is entitled to damages. There being a genuine issue of material fact regarding SBA's breach of the Loan Agreement, summary judgment should be denied.

### 3. SBA's intent behind its failure to disclose the correct payoff amount is a question of fact.

SBA argues it is entitled to summary judgment on Craig-Buff's claim for breach of implied covenant of good faith and fair dealing, because Craig-Buff has not alleged sufficient facts to establish SBA's intent. However, "when the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment."

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

Postlewaite v. McGraw-Hill Inc, 411 F.3d 63, 67 (2d Cir. 2005). See also, National Basketball Ass'n v. SDC Basketball Club, Inc., 815 F.2d 562, 569 (9th Cir. 1987) (holding that evidence of intent is a question of fact). Since Craig-Buff has alleged that SBA acted in bad faith when it failed to disclose the correct payoff amount on all of the SBA loans, there exists a question of fact regarding SBA's intent. As a result, SBA is not entitled to summary judgment on the issue of breach of implied covenant of good faith and fair dealing.

Additionally, SBA incorrectly argues that a claim for breach of implied covenant of good faith and fair dealing is limited to enforcing the express terms of the contract. "Since good faith is merely a way of effectuating the parties intent in unforeseen circumstances, the implied covenant has 'nothing to do with the enforcement of terms actually negotiated.'" U.S. v. Basin Elec. Power Co-op, 248 F.3d 781, 790 (Fed. Cir. 2001), quoting, Continental Bank, N.A. v. Everett, 964 F.2d 701, 705 (7th Cir. 1992). While SBA correctly argues that the implied covenant cannot be used to create obligations not contemplated by the parties, SBA fails to recognize that SBA's obligation to provide payoff information was an inherent obligation, and that it was consistent on the obligations of Craig-Buff to make timely payments and maintain accurate accounts. Contrary to SBA's assertions, Craig-Buff's claim for breach of implied covenant of good faith and fair dealing does not attempt to create a new obligation, but rather directly relates to an existing obligation contained in the Loan Agreement. Once again, the interpretation of the Loan Agreement to determine SBA's obligations raises a question of fact such that summary judgment is not appropriate.

Finally, SBA argues that its failure to provide accurate payoff information did not interfere with Craig-Buff's reasonable expectations of the fruits of the Loan Agreement. SBA erroneously argues that Craig-Buff's expectations were limited to receiving a loan for $245,000. However, SBA fails to consider its and Craig-Buff's continuing obligations under the Loan Agreement. The relationship did not end the day the loan was received. Craig-Buff had a continuing obligation to make timely payments on the loan and keep accurate accounts of its financial situation including all SBA loans. SBA argues that since its failure to provide accurate pay-

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

off information did not affect Craig-Buff's ability to make timely payments, SBA did not interfere with Craig-Buff's expectations. Yet, SBA's failure to provide the accurate payoff amount substantially interfered with Craig-Buff's reasonable expectations that SBA, as servicing agency of the SBA loans, would provide Craig-Buff with accurate information so that it could make informed financial decisions and keep accurate financial accounts as required by the Loan Agreement.

In short, there are material issues of fact raised by Craig-Buff's claim for breach of implied covenant of good faith and fair dealing. As a result, summary judgment on this issue should be denied.

**4. <u>This Court has jurisdiction to consider Craig-Buff's claim for detrimental reliance</u>.**

SBA argues that this Court lacks jurisdiction over Craig-Buff's claim for detrimental reliance because a claim for detrimental reliance sounds in tort. It is well-settled, however, that a cause of action alleging detrimental reliance sounds in contract and under the Tucker Act falls within the exclusive jurisdiction of the Court of Claims. <u>Inner City Broadcasting Corp. v. Cardenas</u>, 554 F.Supp. 42, 47 (D.C. D.C. 1982); <u>Stokes v. Georgia-Pacific Corp.</u>, 894 F.2d 764, 770 (5th Cir. 1990) (holding detrimental reliance claim in <u>not</u> based on tort) (emphasis added). Additionally, to "successfully invoke equitable estoppel based on government-supplied misinformation, plaintiff must show detrimental reliance." <u>Ferry v. Hayden</u>, 954 F.2d 658, 661-62 (11th Cir. 1992). In order to prevail on a claim for detrimental reliance, plaintiff must establish that (1) defendant made a promise; (2) the plaintiff's reliance on this represented promise was reasonable; and (3) the plaintiff's reliance caused a change in position to its detriment. <u>Industrias Magromer Cueros y Pieles, S.A. v. Louisiana Bayou Furs, Inc.</u>, 293 F.3d 912, 921 (5th Cir. 2002).

Essentially, a claim for detrimental reliance is based on promissory estoppel. <u>Stokes</u>, 894 F.2d at 770. Although the doctrine of equitable estoppel is rarely invoked against the government, there is "no flat rule that estoppel may not in any circumstances run against the Govern-

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

ment." Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 60 (1984). See also, Office of Personnel Management v. Richmond, 496 U.S. 414, 419 (1990). In Heckler, the Supreme Court explained that

> "We are hesitant to say that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor and reliability in their dealings with their Government."

Heckler, 467 U.S. at 61.

In the instant case, this Court has exclusive jurisdiction over Craig-Buff's claim for detrimental reliance, because a detrimental reliance claim sounds in contract. Additionally, Craig-Buff has properly made out a prima facie case to support its claim of detrimental reliance. Specifically, SBA made two promises to Craig-Buff regarding the payoff amount of all the SBA loans. On June 23, 2004, SBA told Craig-Buff that the payoff amount of all SBA loans was $1,763,643.62. On July 19, 2004, Craig-Buff contacted SBA to re-confirm the payoff amount of all the SBA loans and SBA once again assured Craig-Buff that the amount was $1,763,643.62. As a result of these two promises Craig-Buff reasonably relied on the payoff amount provided by SBA. Craig-Buff's reliance was reasonable especially given the fact that SBA serviced all the SBA loans, which included the two consolidated loans and the CIT loan, and all payments on these loans were made directly to SBA.

Based on these two promises by SBA, Craig-Buff entered into negotiations with the Buyer to reduce the Purchase Price of the Property by $200,000. In fact, Craig-Buff did not finalize the Purchase Agreement until after it received the two assurances from SBA that the payoff amount of the SBA loans was $1,763,643.62. Contrary to SBA's argument, Craig-Buff did not lower the Purchase Price simply because the Buyer could not secure the original price of $2.5 million. Rather, once Craig-Buff learned the Buyer could not secure a loan for $2.5 million, Craig-Buff immediately contacted SBA to inquire about the payoff amount of all of the SBA loans. It was not until assurances were provided by SBA regarding the payoff amount that Craig-Buff finalized its negotiations with the Buyer and agreed to lower the Purchase Price by

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555

$200,000. In other words, Craig-Buff lowered the Purchase Price because it still expected to realize a profit based on its understanding of the payoff amount of all the SBA loans. Had Craig-Buff known the true payoff amount, Craig-Buff would not have agreed to reduce the purchase price by $200,000. As a result, Craig-Buff detrimentally relied on SBA's promise regarding the payoff amount and is entitled to relief.

Accordingly, there is a genuine issue of material fact regarding Craig-Buff's claim for detrimental reliance and since Craig-Buff has made a prima facie case for detrimental reliance, SBA should not be granted summary judgment on this issue.

## IV

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied by this Court.

Dated this 26th day of September, 2005.

GORDON & SILVER, LTD.

[signature]

Eric R. Olsen
Nevada Bar No. 3127
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
(702) 796-5555
Attorneys for Plaintiff

## CERTIFICATE OF FILING

I hereby certify that on September 26, 2005, a copy of the foregoing Opposition to Defendant's Motion for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Rosemary C. Dittrich
Rosemary C. Dittrich





GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89109
(702) 796-5555