No. 05-507C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CRAIG-BUFF LIMITED PARTNERSHIP,
a Nevada Limited Partnership,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# APPENDIX TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

---

GORDON & SILVER, LTD.
ERIC R. OLSEN, ESQ.
3960 Howard Hughes Parkway, 9th Fl.
Las Vegas, Nevada 89109
Tel: (702) 796-5555
Fax: (702) 369-2666

Attorneys for Plaintiff

# INDEX OF EXHIBITS


1 CIT Note

2 Loan Agreement

3 SBA Approval Letter

4 SBA Settlement Sheets

5 Written Pay-off Demand

EXHIBIT 1

OMB Approval No. 3245-0201

| SBA LOAN NO. |
| --- |
| PLP1618324004 |

# U.S. Small Business Administration

## NOTE

Las Vegas, NV
(City and State)

$245,000

(Date): October 28, 1997

For value received, the undersigned promises to pay to the order of AT&T Small Business Lending Corporation (Payee)

at its office in the city of Parsippany, State of New Jersey

or at holder's option, at such other place as may be designated from time to time by the holder Two Hundred Forty Five Thousand

(Write out amount) dollars,

with interest on unpaid principal computed from the date of each advance to the undersigned at the initial rate of 10.75%

percent per annum, payment to be made in installments as follows:

**Note Payable:** Six (6) installments of interest only will be payable on the first day of each month following the date of this Note. Then, equal monthly installments of principal and interest in the amount of $3,341.00 will be due on the first day of each and every month thereafter, unless the amount of any installment changes pursuant hereto. The balance of principal, accrued interest and all other amounts due hereunder shall be payable on or before Ten (10) years and Five (5) months from the date of this Note. **The initial interest rate shall be Ten and Three Quarters percent (10.75%) per annum.** Each payment shall be applied first to the interest accrued to the date of receipt of said payment, and the balance, if any, to principal and then to any other amounts due hereunder, including late charges. The interest rate shall not exceed the maximum rate allowable under applicable law.

**Late Charges:** Borrower agrees to pay a late charge equal to five percent (5.0%) of the payment amount due if such payment is not received within ten (10) days of the due date.

THIS IS A VARIABLE RATE LOAN. Commencing on the first Adjustment Date (as defined below) and continuing on each Adjustment Date thereafter, the interest rate will fluctuate in accordance with the "Prime Rate" as published in the Money Rates section of *The Wall Street Journal* on such date (or if *The Wall Street Journal* is not published on such date, as published in *The Wall Street Journal* on the first business day after such date, or if no such rate is published in *The Wall Street Journal* then the prime rate as published in a national daily financial newspaper as selected by the holder of this Note (the "Holder"). The interest rate (spread) to be added to the Prime Rate at the beginning of each applicable adjustment period will be Two and One Quarter percent (2.25%). Each adjustment period will be quarterly, beginning on the first day of the calendar quarter following the date of this Note. Adjustment periods and calendar quarters shall commence on each January 1, April 1, July 1 and October 1 (each an "Adjustment Date").

The interest rate on this Note shall increase or decrease on each Adjustment Date by adding the spread to the Prime Rate in effect as of such Adjustment Date.

Upon any changes in the interest rate, the above monthly principal and interest payment shall be adjusted to amortize the remaining principal balance in equal monthly payments of principal and interest over the remaining term of the loan.

Holder shall give written notice to the undersigned of each increase or decrease in the interest rate within thirty (30) days after the effective date of each rate adjustment; however, the fluctuation of the interest rate is not contingent on whether the notice is given and any failure of the Holder to give such notice shall not relieve the Borrower from any obligation to make any payment due under this Note.

If the undersigned shall be in default of payment due on the indebtedness herein and the Small Business Administration (SBA) purchases its guaranteed portion of said indebtedness, the rate of interest on both the guaranteed and unguaranteed portions herein shall become fixed at the rate in effect as of the date of default. If the Undersigned shall not be in default in payment when SBA purchases its guaranteed portion, the rate of interest on both the guaranteed and unguaranteed portions shall be fixed at the rate in effect as of the date of purchase by SBA.

If this Note contains a fluctuating interest rate, the notice provision is not a pre-condition for fluctuation (which shall take place regardless of notice). Payment of any installment of principal or interest owing on this Note may be made prior to the maturity date thereof without penalty. Borrower shall provide lender with written notice of intent to prepay part or all of this loan at least three (3) weeks prior to the anticipated prepayment date. A prepayment is any payment made ahead of schedule that exceeds twenty (20) percent of the then outstanding principal balance. If borrower makes a prepayment and fails to give at least three weeks advance notice of intent to prepay, then, notwithstanding any other provision to the contrary in this note or other document, borrower shall be required to pay lender three weeks interest on the unpaid principal as of the date preceding such prepayment.

The term "Indebtedness" as used h shall mean the indebtedness evidenced by this N including principal, interest, and expenses, whether contingent, now due or hereafter to become due and whether heretofore or contemporaneously herewith or hereafter contracted. The term "Collateral" as used in this Note shall mean any funds, guaranties, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be, hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, the Indebtedness or any part thereof. The Collateral, and each part thereof, shall secure the Indebtedness and each part thereof. The covenants and conditions set forth or referred to in any and all instruments of hypothecation constituting the Collateral are hereby incorporated in this Note as covenants and conditions of the undersigned with the same force and effect as though such covenants and conditions were fully set forth herein.

The Indebtedness shall immediately become due and payable, without notice or demand, upon the appointment of a receiver or liquidator, whether voluntary or involuntary, for the undersigned or for any of its property, or upon the filing of a petition by or against the undersigned under the provisions of any State insolvency law or under the provisions of the Bankruptcy Reform Act of 1978, as amended, or upon the making by the undersigned of an assignment for the benefit of its creditors. Holder is authorized to declare all or any part of the Indebtedness immediately due and payable upon the happening of any of the following events: (1) Failure to pay any part of the Indebtedness when due; (2) nonperformance by the undersigned of any agreement with, or any condition imposed by, Holder or Small Business Administration (hereinafter called "SBA"), with respect to the Indebtedness; (3) Holder's discovery of the undersigned's failure in any application of the undersigned to Holder or SBA to disclose any fact deemed by Holder to be material or of the making therein or in any of the said agreements, or in any affidavit or other documents submitted in connection with said application or the indebtedness, of any misrepresentation by, on behalf of, or for the benefit of the undersigned; (4) the reorganization (other than a reorganization pursuant to any of the provisions of the Bankruptcy Reform Act of 1978, as amended) or merger or consolidation of the undersigned (or the making of any agreement therefor) without the prior written consent of Holder; (5) the undersigned's failure duly to account, to Holder's satisfaction, at such time or times as Holder may require, for any of the Collateral, or proceeds thereof, coming into the control of the undersigned; or (6) the institution of any suit affecting the undersigned deemed by Holder to affect adversely its interest hereunder in the Collateral or otherwise. Holder's failure to exercise its rights under this paragraph shall not constitute a waiver thereof.

Upon the nonpayment of the Indebtedness, or any part thereof, when due, whether by acceleration or otherwise, Holder is empowered to sell, assign, and deliver the whole or any part of the Collateral at public or private sale, without demand, advertisement or notice of the time or place of sale or of any adjournment thereof, which are hereby expressly waived. After deducting all expenses incidental to or arising from such sale or sales, Holder may apply the residue of the proceeds thereof to the payment of the Indebtedness, as it shall deem proper, returning the excess, if any, to the undersigned. The undersigned hereby waives all right of redemption or appraisement whether before or after sale.

Holder is further empowered to collect or cause to be collected or otherwise to be converted into money all or any part of the Collateral, by suit or otherwise, and to surrender, compromise, release, renew, extend, exchange, or substitute any item of the Collateral in transactions with the undersigned or any third party, irrespective of any assignment thereof by the undersigned, and without prior notice to or consent of the undersigned or any assignee. Whenever any item of the Collateral shall not be paid when due, or otherwise shall be in default, whether or not the indebtedness, or any part thereof, has become due, Holder shall have the same rights and powers with respect to such item of the Collateral as are granted in this paragraph in case of nonpayment of the Indebtedness, or any part thereof, when due. None of the rights, remedies, privileges, or powers of Holder expressly provided for herein shall be exclusive, but each of them shall be cumulative with and in addition to every other right, remedy, privilege, and power now or hereafter existing in favor of Holder, whether at law or equity, by statute or otherwise.

The undersigned agrees to take all necessary steps to administer, supervise, preserve, and protect the Collateral; and regardless of any action taken by Holder, there shall be no duty upon Holder in this respect. The undersigned shall pay all expenses of any nature, whether incurred in or out of court, and whether incurred before or after this Note shall become due at its maturity date or otherwise, including but not limited to reasonable attorney's fees and costs, which Holder may deem necessary or proper in connection with the satisfaction of the Indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance) or the realization upon the Collateral. Holder is authorized to pay at any time and from time to time any or all of such expenses, add the amount of such payment to the amount of the Indebtedness, and charge interest thereon at the rate specified herein with respect to the principal amount of this Note.

The security rights of Holder and its assigns hereunder shall not be impaired by Holder's sale, hypothecation or rehypothecation of any note of the undersigned or any item of the Collateral, or by any indulgence, including but not limited to (a) any renewal, extension, or modification which Holder may grant with respect to the Indebtedness or any part thereof, or (b) any surrender, compromise, release renewal, extension, exchange, or substitution which Holder may grant in respect of the Collateral, or (c) any indulgence granted in respect of any endorser, guarantor, or surety. The purchaser, assignee, transferee, or pledgee of this Note, the Collateral, and guaranty, and any other document (or any of them), sold, assigned, transferred, pledged, or repledged, shall forthwith become vested with and entitled to exercise all the powers and rights given by this Note and all applications of the undersigned to Holder or SBA, as if said purchaser, assignee, transferee, or pledgee were originally named as Payee in this Note and in said application or applications.

This promissory note is given to ) a loan which SBA is making or in which it is pa... ...ing and, pursuant to Part 101 of the Rules and Regulations of SBA (13 C.F.R 101.1(d)), this instrument is to be construed and (when SBA is the Holder or a party in interest) enforced in accordance with applicable Federal law.

Craig-Buff Limited Partnership

By:____________________________

Harsh Sidhu, Individually and as a General Partner

THE GUARANTEED PORTION OF THIS NOTE HAS BEEN TRANSFERRED TO A REGISTERED HOLDER FOR VALUE

6/18/99

PETER J. TOMASI, A.V.P. DATE

Note. --Corporate applicants must execute Note, in corporate name, by duly authorized officer, and seal must be affixed and duly attested; partnership applicants must execute Note in firm name, together with signature of a general partner.

EXHIBIT 2

Case 1:05-cv-00507-JFM Document 8 Filed 08/26/2005 Page 3 of 15

AUTHORIZATION AND LOAN AGREEMENT
(Guaranty Loan)

238/6

U.S. Small Business Administration
Las Vegas District Office
Post Office Box 7527
Las Vegas, Nevada 89125

LOAN NUMBER:PLP1618324004

Lender:

AT&T Small Business Lending Corporation
5613 DTC Parkway, Suite 450
Englewood, CO 80111

Your request dated October 15, 1997 for SBA to guarantee SEVENTY FIVE PERCENT (75%) of a loan in the amount of $245,000.00 to be made by Lender to Craig-Buff Limited Partnership, 4620 E. Russell Road, Las Vegas, NV 89120 is hereby approved pursuant to Section 7a of the Small Business Act as amended.

1. THE FOLLOWING FORMS ARE HEREWITH ENCLOSED:

1.A Three copies of SBA Form 147 Note, one to be executed by the Borrower, the other two to be conformed. The original executed copy must be retained by you and one conformed copy must be sent to SBA immediately after first disbursement.

1.B Copies of the SBA Form 1050 Settlement Sheet are to be completed and executed by Lender and Borrower to reflect each disbursement. Prompt reporting of disbursements is necessary. Return the first two copies ("Denver FOD" copy and "Servicing Office" copy) to SBA at the District Office Address shown above.

1.C SBA Form 159 Compensation Agreement shall be executed by Borrower, its representative and Lender and returned to SBA if Borrower has employed an attorney, accountant or other representative, or if Borrower is charged fees for services by Lender or an associate of Lender. If no such fees have been charged, please write "None" and return the form, executed by the Lender, to SBA.

1.D The original copy of this Authorization shall be executed prior to first disbursement and retained in loan file by the Lender. Additional SBA Forms required, if any, are itemized below.

1.E SBA Form 148 - Guaranty 1 Set
1.H SBA Form 160-A - Certificate as to Partners
1.J SBA Form 641 - Request for Counseling
1.K SBA Form 722 - Equal Employment Opportunity Poster
1.L SBA Form 793 - Notice to New SBA Borrowers

(Revision 3.1 - 12/93) 0001

2. THIS AUTHORIZATION IS SUBJECT TO:

2.A Provisions of the Guaranty Agreement between Lender and SBA, dated November 3, 1993, and any Supplemental Guaranty Agreement between Lender and SBA.

2.B.01 First disbursement of the loan being made not later than Six (6) months, and no disbursement being made later than Nine (9) months, from the date of this Authorization, unless such time is extended pursuant to prior written consent by SBA.

2.B.02 No disbursement of this loan shall be made beyond the maturity date established below, unless such time is extended pursuant to prior written consent of SBA. **(FOR LINES OF CREDIT)**

2.C Receipt by Lender of satisfactory evidence that there has been no unremedied adverse change since the date of the Application, or since any of the preceding disbursements, in the financial or any other condition of Borrower, which would warrant withholding or not making any such disbursement or any further disbursement.

2.D The representations made by Borrower in its loan application, the requirements or conditions set forth in Lender's application form, including the supporting documents thereto, the conditions set forth herein and any future conditions imposed by Lender (with prior SBA approval).

2.E Notwithstanding any other provisions of this Authorization, the Lender may use its own form(s) in lieu of standard SBA forms, provided Lender has obtained SBA's prior written consent as to specific content and format of said alternate forms. (This waiver does not apply to SBA Form 147 Note and SBA Form 148 Guaranty, which are mandatory forms.)

2.F Borrower and Guarantors, if any, acknowledge that in accordance with 13 CFR Part 101, they are not entitled to and hereby waive the right to claim or assert any immunities or defenses, including but not limited to any right of subrogation and/or contribution against SBA, which may be available under local law, to defeat, modify, or otherwise limit their obligation to repay any monies advanced by Lender to Borrower pursuant to the terms of this Loan Authorization.

2.G Lender agrees to pay an ongoing guaranty fee equal to one-half of one percent per annum on the guaranteed portion of the outstanding balance. This fee shall be paid by the lender following the receipt of a payment from the borrower. The fee may not be charged to the borrower and shall be received by the SBA-designated fiscal and transfer agent by the third day of the month (or the next business day), following receipt of a scheduled payment. This is a two business day grace period after the due date. Lender agrees to report the status of all of its SBA guaranteed loans on a monthly basis using SBA form 1502 or an acceptable electronic format.

3. REPAYMENT TERMS:

3.A. Repayment term, interest rate(s), and maturity.

Repayment terms contained in the executed SBA Form 147 Note shall conform to the following paragraphs:

3.A.03 **Note Pa ,le:** Six (6) installments of interest o. will be payable on the first day of each month following the date of this Note. Then, equal monthly installments of principal and interest in the amount of $3,341.00 will be due on the first day of each and every month thereafter, unless the amount of any installment changes pursuant hereto. The balance of principal, accrued interest and all other amounts due hereunder shall be payable on or before Ten (10) years and Five (5) months from the date of this Note. **The initial interest rate shall be Ten and Three Quarters percent (10.75%) per annum.** Each payment shall be applied first to the interest accrued to the date of receipt of said payment, and the balance, if any, to principal and then to any other amounts due hereunder, including late charges. The interest rate shall not exceed the maximum rate allowable under applicable law.

**Late Charges:** Borrower agrees to pay a late charge equal to five percent (5.0%) of the payment amount due if such payment is not received within ten (10) days of the due date.

THIS IS A VARIABLE RATE LOAN. Commencing on the first Adjustment Date (as defined below) and continuing on each Adjustment Date thereafter, the interest rate will fluctuate in accordance with the "Prime Rate" as published in the Money Rates section of *The Wall Street Journal* on such date (or if *The Wall Street Journal* is not published on such date, as published in *The Wall Street Journal* on the first business day after such date, or if no such rate is published in *The Wall Street Journal* then the prime rate as published in a national daily financial newspaper as selected by the holder of this Note (the "Holder"). The interest rate (spread) to be added to the Prime Rate at the beginning of each applicable adjustment period will be Two and One Quarter percent (2.25%) . Each adjustment period will be quarterly, beginning on the first day of the calendar quarter following the date of this Note. Adjustment periods and calendar quarters shall commence on each January 1, April 1, July 1 and October 1 (each an "Adjustment Date").

The interest rate on this Note shall increase or decrease on each Adjustment Date by adding the spread to the Prime Rate in effect as of such Adjustment Date.

Upon any changes in the interest rate, the above monthly principal and interest payment shall be adjusted to amortize the remaining principal balance in equal monthly payments of principal and interest over the remaining term of the loan.

Holder shall give written notice to the undersigned of each increase or decrease in the interest rate within thirty (30) days after the effective date of each rate adjustment; however, the fluctuation of the interest rate is not contingent on whether the notice is given and any failure of the Holder to give such notice shall not relieve the Borrower from any obligation to make any payment due under this Note.

If the undersigned shall be in default of payment due on the indebtedness herein and the Small Business Administration (SBA) purchases its guaranteed portion of said indebtedness, the rate of interest on both the guaranteed and unguaranteed portions herein shall become fixed at the rate in effect as of the date of default. If the Undersigned shall not be in default in payment when SBA purchases its guaranteed portion, the rate of interest on both the guaranteed and unguaranteed portions shall be fixed at the rate in effect as of the date of purchase by SBA.

Borrower shall provide Holder with written notice of intent to prepay part or all of this loan at least 21 calendar days prior to the prepayment date. A prepayment is any payment made ahead of schedule that exceeds twenty (20%) percent of the then outstanding principal balance before such prepayment. If Borrower makes a prepayment and fails to give at least 21 days advance notice of intent to prepay, then, notwithstanding any other provisions to the contrary in this Note or other document, Borrower shall pay Holder 21 days interest on the unpaid principal as of the date preceding such prepayment.

3.B USE OF PROCEEDS OF LOAN AS FOLLOWS:

3.B.03 Approximately $144,533.00 for construction of a car wash located at 4620 E. Russell Road, Las Vegas, NV 89120.

3.B.05 Approximately $14,453.00 to pay construction contingency.

3.B.06 Approximately $80,000.00 to purchase business machinery and equipment.

3.B.12 Approximately $1,005.00 for working capital to be disbursed as deemed necessary by Lender.

3.B.13 Proceeds not expended for purposes indicated above may be disbursed as additional working capital provided said funds do not exceed ten percent (10%) of the specific purpose authorized or $10,000, whichever is less.

3.B.15 Approximately $5,009.00 for other purposes as follows: Construction Loan Interim Interest (Disbursements of proceeds under this allocation to be made monthly by direct payment to lender without use of a joint payee check.)

3.C COLLATERAL.

3.C.03 Third Deed of Trust (including Assignment of Rents) on land and improvements owned by Craig-Buff Limited Partnership and located at 4620 E. Russell Road, Las Vegas, NV 89120, subject only to prior liens held by AT&T Commercial Finance Corporation and New Ventures Capital Development Co. with outstanding balances of approximately $799,732.00 and $655,000.00 respectively. Evidence of title and priority of lien will be based upon STANDARD TITLE POLICY. Deed of Trust must include a Due-on-Sale clause.

3.C.04 First security interest to be taken by Financing Statement and Security Agreement in all of the following personal property, now owned or hereafter acquired, wherever located, and proceeds therefrom:

3.C.04.a Machinery, Equipment, and Furniture

3.C.04.b EXCLUDING Titled Motor Vehicles

3.C.04.c Fixtures

3.C.04.d Inventory

3.C.13 Guaranty on SBA Form 148 executed by Harsh Sidhu and secured by a Fourth Deed of Trust on land and improvements located at 4537 Special Court, Las Vegas, NV 89130, subject only to prior liens held by Southwestern Mortgage and First Home Acceptance Mortgage and California Lending Group, Inc. with approximate outstanding balances of $128,150.00 and $6,000.00 and $10,000.00 respectively. Evidence of title and priority of lien will be based upon Limited Fast Policy. Deed of Trust must include a Due-on-Sale clause.

4. TO FURTHER INDUCE SBA TO GUARANTEE THIS LOAN, BORROWER AGREES TO THE FOLLOWING CONDITIONS DURING THE TERM OF THIS LOAN:

4.A Execution of all documents required in Item 1 above.

4.B Reimbursable Expenses -

Borrower will, on demand, reimburse Lender for any and all expenses incurred, or which may be hereafter incurred, by Lender from time to time in connection with or by reason of Borrower's application for, and the making and administration of the loan.

4.C Books, Records and Reports -

Borrower will at all times keep proper books of account in a manner satisfactory to Lender and/or SBA. Borrower hereby authorizes Lender or SBA to make or cause to be made, at Borrower's expense and in such manner and at such times as Lender or SBA may require, (a) inspections and audits of any books, records and paper in the custody or control of Borrower or others, relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (b) inspections and appraisals of any of Borrower's assets. Borrower will furnish to Lender for the twelve month period ending December 31, 1997 and annually thereafter (no later than 3 months following the expiration of any such period) and at such other times and in such form as Lender may prescribe, Borrower's financial and operating statements. Borrower hereby authorizes all Federal, State and municipal authorities to furnish reports of examinations, records, and other information relating to the conditions and affairs of Borrower and any desired information from reports, returns, files, and records of such authorities upon request therefore by Lender or SBA.

4.C.02 The Borrower's financial and operating statements required in Paragraph 4.C herein shall include annual financial statements compiled by an independent public accountant submitted within ninety (90) days of the close of Borrower's fiscal year.

4.C.04 If loan is not closed within 3 MONTHS month(s) from date of the Authorization, Borrower shall furnish Lender current, signed financial statements for the business, each principal and each guarantor.

4.D Borrower shall execute any contracts for managen . consulting services without prior approval of Lender.

4.E Distributions and Compensation -

A. If Borrower is a corporation, the written consent of the Lender is required to declare or pay any dividends or make any distribution upon its capital stock, or purchase or retire any capital stock.

Lender's approval is also required if a corporate borrower intends to consolidate, or merge with another company, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus or otherwise, to any company, directly or indirectly, controlling or affiliated with or controlled by corporate Borrower, or any other company, or to any officer, director or employee of Borrower, or of any such company.

B. If Borrower is a partnership or individual, Lender's approval is required to make any distribution of assets of the business of Borrower, except for reasonable compensation for services, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus or otherwise, to any partner or any of its employees, or to any company, directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

Regardless of the Borrower's structure (corporate, partnership or individual) Borrower will not, without prior consent of Lender, (a) pledge, mortgage or otherwise encumber in any manner whatsoever any of Borrower's present or after acquired property or assets, (b) borrow money or obtain a loan from any person, corporation or any other source, (c) make any investments in other business or real property, (d) make or guarantee any advances or loans made to others, (e) incorporate, if presently a partnership or sole proprietorship, and (f) sell a substantial part, or all of its assets.

4.F OTHER PROVISIONS.

4.F.02 SBA Form 147 Note shall be executed by Craig-Buff Limited Partnership (a partnership) and by Harsh Sidhu, as individuals and as general partner.

4.F.05 Borrower to execute SBA Form 159 Compensation Agreement prior to first disbursement.

4.F.06 Borrower to execute SBA Form 641 Request for Counseling prior to first disbursement.

4.F.07 Prior to first disbursement, Borrower shall provide Lender an executed copy of its Partnership Agreement and shall complete SBA Form 160A Certificate as to Partners.

4.F.08 Borrower will post in its place of business SBA Form 722 Equal Opportunity Poster where it will be clearly visible to employees, applicants for employment, and members of the general public.

4.F.09 Prior to first disbursement, the Lender must be in receipt of evidence of the kind described below from an independent authoritative source which is sufficient to indicate to the Lender that the property is not in a special hazard area. If such evidence is not provided to the Lender, the borrower must obtain, and maintain, Federal Flood Insurance or other appropriate special hazard

insurance in am :s and coverages equal to the lesser o / the insurable value of the property or (2) the maximum limit of coverage available. Evidence that required flood or special hazard insurance has been acquired may be in the form of proof of payment to any licensed insurance agent specifically relative to the required flood or hazard insurance or a copy of the required flood or hazard insurance or a copy of the required flood or hazard insurance policy which has been issued. Borrower will not be eligible for either any future disaster assistance or SBA loan assistance if this flood or hazard insurance is not maintained as stipulated herein throughout the entire term of this loan.

As evidence that the property is not located within a special hazard area subject to flooding, mudslides, erosions or earthquakes, the Lender may rely on a determination of flood zone or special hazard area status by the applicant's property & casualty company, real estate appraiser, title insurance company, a local government agency or other authoritative source approved by SBA which would ordinarily have knowledge of the special hazard area status for the property being finance.

4.F.10 Borrower and/or owners of the collateral shall provide and maintain fire, lightning and extended coverage for the maximum insurable amount on all real and personal property taken as collateral, naming Lender as Mortgagee or Loss Payee and providing that the interests of the Mortgagee or Loss Payee shall not be impaired or invalidated by an act or neglect of the owner/insured. Insurance policy shall refer to the SBA loan number.

4.F.23 Prior to first disbursement, Lender is to be in receipt of evidence of injection of at least $102,513.00 by Borrower for use as follows: Building Improvements, Franchise Fee, Construction Fees, Miscellaneous closing costs.

4.F.26 Prior to or at the time of the first disbursement, Borrower shall provide Lender with satisfactory evidence that it is duly licensed.

4.F.33 Borrower certifies that subject firm will occupy, at all times during the term of this loan, more than 50% of the square footage of building(s) purchased with the proceeds of this loan.

4.F.39 Prior to commencement of construction and prior to any disbursement on account of the loan, the following are required:

4.F.39.a Borrower must submit final plans and specifications for review by Lender. Plans may not be changed thereafter without prior written approval of Lender and, if applicable, corporate surety in writing.

4.F.39.b Borrower must submit evidence of Builder's Risk and Worker's Compensation insurance to be carried by the contractor.

4.F.39.c Borrower must furnish a copy of a firm construction contract from an acceptable contractor at a specified price not to exceed $144,533.00, including a provision that no material changes in the approved plans and specifications will be ordered or permitted without prior written consent of Lender and, if applicable, of the surety company issuing the surety bond.

4.F.39.d Borrower and cc ...ctor must execute SBA Form 601, App... ...nt's Agreement of Compliance.

4.F.39.e Borrower must execute Note and Deed of Trust in favor of Lender with Deed of Trust to be filed of record prior to commencement of any construction.

4.F.39.f Proceeds of this loan for the purpose of construction to be disbursed upon completion of construction or in accordance with terms of construction contract. If disbursed on the basis of progress payments, each disbursement must pay all construction costs to date of contractor's invoice, less ten percent (10%) retainage to be disbursed upon completion of the contract.

4.F.39.g Inspections must be made by qualified individuals, prior to all progress disbursements.

4.F.39.h Prior to any disbursement on account of the loan, Lender to be in receipt of evidence satisfactory to Lender that proceeds will complete payment in full of the cost of construction and that no unpaid labor or material liens will exist. Prior to any disbursement of construction funds, lien waivers must be obtained from all contractors, subcontractors and any independent workers involved in the construction. A lien-free endorsement from the title company involved also must be obtained.

4.F.39.i Any overruns in construction cost will be paid by the Borrower.

4.F.39.j The construction, when completed, will conform to all state and local building, zoning, and sanitary codes.

4.F.39.k All new facilities shall be designed and constructed to be readily accessible to and usable by handicapped persons in accordance with the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., which is incorporated by reference, and as required by local building code. The standards cited above are the minimum acceptable standards for accessibility purposes.

4.F.39.l In the construction of a new building or an addition to a building, the construction must conform with the "National Earthquake Hazards Reduction Program Recommended Provisions for the Development of Seismic Regulations for New Buildings." Compliance with these requirements shall be evidenced by a certificate issued by a licensed building architect, construction engineer or similar professional, or a letter from a state or local government agency stating that the issuance of an occupancy permit is required and is subject to conformance with building codes and that the local building codes include the Seismic standards.

4.F.40 Prior to any disbursement, Borrower must have spent not less than $55,000.00 of Borrower's own funds toward the new construction.

4.F.41 Lender may charge the Borrower a one-time fee not to exceed two percent (2%) of the portion of the loan designated for construction. Said fee may not exceed the added costs to the Lender generated by the handling of the construction.

4.F.45 Lender to remit its check for the SBA guaranty fee in the amount of $5,512.50, to SBA within 90 days from the date of this Authorization and Loan Agreement. The check identified by the SBA loan number, must be forwarded to the U.S. Small Business Administration, P.O. Box 748,

Denver, Colora 80259. Lender may require reimb ement of the above fee from the Borrower; provided, however, that the Lender has paid such fee to SBA and the charge to the Borrower is not made prior to Lender's first disbursement on this loan. The fee may be part of the loan proceeds.

4.F.46 Prepayment penalty fees as a condition to this loan are prohibited.

4.F.47 Such other terms and conditions which Lender may set forth which are not inconsistent with the provisions of this Authorization.

4.F.48 Borrower certifies that at the time it submitted its Loan Application it was and shall continue to be current on all Federal and State withholding taxes, payroll taxes, sales taxes, and similar funds held in trust.

4.F.50 Borrower acknowledges and understands that the funding of this loan is conditioned upon the real property offered as collateral ("the Property") being free from contamination by any Hazardous Substance and that if such contamination is present or reasonably appears to be present, the loan may be funded or canceled at any time in the sole discretion of Lender and/or SBA. If the loan is canceled in whole or in part, Borrower agrees to release Lender and/or SBA from all liability. As used in this Loan Authorization, the term "contamination" means the presence of any Hazardous Substance at a level in excess of that permitted or allowed by local, state or federal laws and regulations.

4.F.50.a For purpose of this Loan Authorization, the term "Hazardous Substance" means (i) any substance, product, waste or other material of any nature whatsoever which is or becomes listed, regulated, or addressed pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C § 9601, et seq. ("CERCLA"); the Hazardous Materials Transportation Act, 49 U.S.C. § 1801, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"); the Toxic Substances Control Act, 15 U.S.C. Sub-section 2601 et seq.; the Clean Water Act, 33 U.S.C. Sub-section 1251 et seq.; all as amended, or any other federal, state or local statute, law, ordinance, resolution, code, rule, regulation, order or decree regulating, relating to, or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance, or material, as now or at any time hereafter in effect. (ii) any substance, product, waste or other material of any nature whatsoever which may give rise to liability under any of the above statutes or under any statutory or common law theory based on negligence, trespass, intentional tort, nuisance or strict liability or under any reported decisions of a state or federal court, (iii) petroleum or crude oil other than petroleum and petroleum products which are contained within regularly operated motor vehicles, and (iv) asbestos.

4.F.51 Borrower represents, warrants and acknowledges that: (1) at the time it submitted its loan application it was and shall continue to be in compliance with all local, state, and federal laws and regulations pertaining to Hazardous Substances; (2) Borrower has no knowledge of any contamination from Hazardous Substances of any real or personal property pledged as collateral for this loan which is in violation of any such laws and regulations; (3) Borrower assumes full responsibility for all costs incurred in any clean-up involving Hazardous Substances and agrees to indemnify Lender and SBA against payment of any such costs (Borrower may be required by Lender and/or SBA to execute a separate indemnification agreement); (4) until full repayment of the loan, Borrower shall promptly notify Lender and SBA if it knows, suspects or believes there

may be any Haz ous Substance in or around the real p rty securing this loan or if Borrower and/or such property are subject to any investigation by any Governmental agency pertaining to any Hazardous Substance.

4.F.52 Prior to first disbursement, Lender shall make a field visit to the site of all commercial real estate to be taken as collateral and shall obtain from Borrower (and owner if the loan is for the purchase of real estate) an executed Environmental Questionnaire and Disclosure Statement. Lender shall review the Statement and determine whether there is reason to believe that Hazardous Substances are present on the Property. If Lender makes such a determination, it shall advise SBA before any disbursement of loan proceeds. At the sole discretion of SBA and/or Lender, Borrower may be required to obtain a Phase I Environmental Risk Site Assessment on the Property satisfactory to Lender and SBA.

4.F.53 Prior to first disbursement, Lender shall obtain a Phase I Environmental Risk Site Assessment indicating to the satisfaction of Lender and SBA that the Property is free from contamination by any Hazardous Substance.

4.F.54 Prior to first disbursement, Borrower shall provide Lender with evidence that all underground storage tanks located on and/or to be placed on Borrower's premises have received permits issued by the appropriate local agency.

4.F.55 Prior to first disbursement, Borrower shall provide Lender with a copy of the most recent local agency inspection report or special inspection report on all underground storage tanks located on Borrower's premises. If the most recent such report is more than 12 months old, a tank integrity test must be performed on each tank by a state licensed tank tester. The results of any such test must be satisfactory to the local city or county agency or the Nevada Environmental Protection Agency, as applicable.

**PRIOR TO FIRST DISBUREMENT, VERIFICATION FROM THE IRS THAT TAX RETURNS SUBMITTED BY BORROWER WITH THE APPLICATION FOR THIS LOAN CONFORM TO THE RETURNS FILED WITH THE IRS FOR THE FOLLOWING ENTITIES AND YEARS:**

**Borrower's execution of this Authorization & Loan Agreement constitutes a certification that no individual with a 50% or more ownership interest in Borrower is more than 60 days delinquent under any administrative order, court order, or repayment agreement between the individual and a custodial parent or state or local governmental agency providing child support enforcement services that requires the individual to pay child support as defined in § 462(b) of the Social Security Act.**

5. PARTIES AFFECTED.

This Agreement shall be binding upon Lender, Borrower and each of their successors and assigns. No provision stated herein shall be waived without the prior written consent of SBA.

SMALL BUSINESS ADMINISTRATION

Administrator: AIDA ALVAREZ

**"As an agent for and on behalf of the U.S. Small Business Administration"**

**AT&T Small Business Lending Corporation**

**By:** [signature] 10-15-97

**Date**

In consideration of the SBA guaranty of the loan to be advanced by Lender to Borrower, the undersigned hereby acknowledge that they have received a copy and understand the terms and conditions of this Loan Authorization, and agree to perform in accordance therewith.

LENDER

Name: AT&T SMALL BUSINESS LENDING CORPORATION

By: [signature]

Title: Pamela K. Scott, Assistant Vice President

Date: 11-14-97

BORROWER

Craig-Buff Limited Partnership

By: [signature]

Harsh Sidhu, General Partner

Guarantor: [signature]

Harsh Sidhu

(Revision 3.1 - 12/93)

0011

NOTE:

(1) Corporate applicants and/or Guarantors must execute this Authorization, in corporate name, by duly authorized officer, and seal may be affixed and duly attested; partnership applicants must execute in firm name, together with signature of a general partner.

U. S. SMALL BUSINESS ADMINISTRATION
GUARANTY LOAN PURCHASED--INITIAL PURCHASE

DATE: 03/26/03
TIME: 12:11

LOAN NUMBER: 16185240-04
BORROWER: TURTLE STOP
1128 STATUS: 06: INPUT TO LOAN ACCOUNTING
LENDING BANK: CIT SMALL BUSINESS LENDING CORPO
1 CIT DRIVE
LIVINGSTON NJ 07039

CONTROL NUMBER: 73581
SERVICING OFFICE: 0944
ENTERED BY OFFICE: 0944

BANK INTEREST RATE: 9.250
LOAN WILL BE SERVICED BY: 2: BANK
DATE OF OLDEST UNCURED DEFAULT: 07/01/01
DATE ADDTL DOCS REQ BY SBA: 11/04/02
327 NUMBER: 03 327 DATE: 02/26/03

SBA PERCENT OF LOAN: 75.000
SERVICING FEE PERCENT: 0.000
DATE USER'S DEMAND RECEIVED: 10/16/02
DATE ADDTL DOCS REC BY SBA: 02/25/03
SECONDARY BANK? NO

BUY MORE DAYS OF INTEREST THAN STANDARD? NO
327 AUTHORIZING THIS: 00 DATE: 00/00/00
REFUND ALL PRINCIPAL AND/OR INTEREST WITHHELD UPON PAYMENT IN FULL? YES
WORKOUT AMT TO DEDUCT: PRINCIPAL: 0.00 INTEREST: 0.00
DATE PURCHASED: 02/27/03
LEGAL EXPENSE: 0.00
INT.PD.THRU DT. (BY BORROWER): 07/16/02

| | **GROSS** | **SBA SHARE** |
|---|---|---|
| PRINCIPAL PURCHASED: | 272,997.03 | 204,747.77 |
| INTEREST ACCRUED: | 15,635.62 | 11,726.72 |
| TOTAL PRIN. & INT. DISALLOWED: | | 5,500.14 |
| PURCHASE INTEREST ADJUSTMENT: | | 673.15 |
| NET DISBURSEMENT TO PAYEE: | | 210,301.20 |

*********************** LOAN INSTALLMENT INFORMATION ***********************
INSTALLMENT TYPE: F: FIXED INSTALLMENT FREQ: M: MONTHLY AMT: 2,629.00
NEXT INSTALL. DUE: 07/01/01 FREQ.TABLE: 1 1 1 1 1 1 1 1 1 1 1 1
MATURITY DATE: 03/28/09
FINANCIAL STATEMENT FREQUENCY: SERV.GROUP: 0
UCC REFILING FREQUENCY: 00 DATE: 00/00/00
DATE: 00/00/00

*********************** WIRE TRANSFER BANK INFORMATION ***********************
BANK A: BANK TO RECEIVE WIRE TRANSFER:
CHASE MANHATTAN BANK NEW YORK NY
CONTACT NAME: DORIS RAUSCH PHONE: 800-453-3548
WIRE TRANSFER NUMBER: 021000021 ACCOUNT NUMBER: 323-891616
ADDITIONAL INFORMATION: CITSBLC-NADINE VISLOSKY
BANK B: BANK TO WHICH PAYMENT WILL BE FURTHER CREDITED IF DIFFERENT FROM (A):
BANK C: BANK WHICH WILL BE THE FINAL PAYEE, IF DIFFERENT FROM (A) AND (B):
*********************************************************
FUND SYMBOL: 73X4149 DISB.SCHED.NUMBER: G3659 DATE DISBURSED: 02/27/03

RECOMMENDING OFFICIAL: HAMILTON
SIGNATURE DATE: 02/26/03

APPROVING OFFICIAL: ERECKSON
PHONE: 702-388-6672
SIGNATURE DATE: 02/26/03

# EXHIBIT 3

**U.S. SMALL BUSINESS ADMINISTRATION**
**Sacramento Loan Processing Center**
660 J Street, Suite 233
Sacramento, CA 95814-2413
(916)498-6412 (916)498-6434 (Fax)

December 17, 1998

Ms. Kim Hellweg
AT&T Small Business Lending Corporation

Fax: (303)646-1272

Dear: Ms. Hellweg

RE: Turtle Stop
PLP 161-832-4004
327 Modification Number: 3
Control Number: 71014-055-04

We received your request dated 12/08/98and we consent to the following action(s) regarding the above loan:

The principal amount of the loan has been increased to $294,000.00.

NOTE: THIS CASE FILE HAS BEEN TRANSFERRED TO FRESNO SERVICING FOR SERVICING. ALL FUTURE REQUESTS SHOULD BE SENT TO THIS OFFICE.

Sincerely,

Hardy Slay II

Hardy Slay
Loan Officer

EXHIBIT 4

CCAN: 25339

# U.S. Small Business Administration
## Settlement Sheet

OMB APPROVAL NO.: 3245-0200
EXPIRATION DATE: 3/31/95

| Lender (Name and Address - Include Zip Code)<br>AT&T Small Business Lending Corporation<br>P.O. Box 440, 2 Gatehall Drive<br>Parsippany, NJ 07054-0440 | Borrower (Name)<br>Craig-Buff Limited Partnership |
|---|---|
| SBA Loan Number (10 digits)<br>PLP1618324004 | Lender Computes interest on a 365 day basis. |

Sum of Prior disbursements $0.00 + This Disbursement $40,374.04 = Total $40,374.04

The provisions of 18 U.S.C. 1001 and 15 U.S.C. 545 provide certain criminal penalties for making false statements, willfully overvaluing collateral, or other prohibited acts. To induce SBA, directly or indirectly, to participate in this loan, the *Borrower*, subject to these provisions acknowledges receipt of $40,374.04 on 10/29/97 and certifies (1) that the proceeds at this disbursement will be, and all previous disbursements have been, used in accordance with the Loan Authorization, (2) that there has been no substantial adverse change in financial condition, organization, operations, or fixed assets since application for this loan was filed or since the previous disbursement, and (3) that there are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for this loan.

*Lender* certifies that disbursement of the loan proceeds was made and the loan proceeds were used as set forth below and in accordance with the Loan Authorization *by issuance of joint payee checks as detailed below except checks for cash operating capital, cash to reimburse borrower for evidenced expenditures made after loan approval date for such authorized use of proceeds, or as otherwise directed by the Loan Authorization*, and that construction, paid with loan proceeds as listed below has been completed. **(Any deviation from the Loan Authorization must be authorized in writing by SBA prior to expenditure of the loan funds.)**

See paragraph 3b of Authorization "Use of Proceeds"

| Subparagraph | Name of Payee | Date and Amount of Payment | Purpose |
|---|---|---|---|
| 3.B.06 | First American Title Company of Nevada | 10/29/97 $40,374.04 | Machinery/Equipment |

To further induce SBA to participate in the loan, Lender certifies that neither the Lender nor its Associates, officers agents, affiliates or attorneys have charged or will charge or receive, directly or indirectly, any bonus, fee commission, or other payment or benefit, or require a compensating balance, Certificate of Deposit, or other security in connection with making or servicing of this loan (other than those reported on SBA Forms 4 or 159 "Compensation Agreement). It is understood that all fees not approved by SBA are prohibited, except as may be specifically permitted by the Loan Authorization, SBA regulations or the SBA Form 750 "Guaranty Agreement".

| Lender | Borrower |
|---|---|
| AT&T Small Business Lending Corporation | Craig-Buff Limited Partnership |
| By: [signature]<br>Kim Hellweg, Loan Closer | By: [signature]<br>Harsh Sidhu, Individually and as a General Partner |
| Date 10/29/97 | Date October 29, 1997 |

This Certification must be signed and returned to the SBA immediately after each disbursement. If there is a large number of checks, itemize on separate sheets, sign and attach hereto.

| SBA Review By | Title | Date |
|---|---|---|
| | | |

The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this information collection, please contact Chief, Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

SBA Form 1050 (5-91) REF 70 50 Use 4-89 Edition Until Exhausted. YELLOW to SBA, PINK to Lender, BLUE to Borrower

CCAN: 25339

# U.S. Small Business Administration Settlement Sheet

OMB APPROVAL NO.: 3245-0200
EXPIRATION DATE: 3/31/95

| | |
|---|---|
| Lender (Name and Address - Include Zip Code)<br>AT&T Small Business Lending Corporation<br>P.O. Box 440, 2 Gatehall Drive<br>Parsippany, NJ 07054-0440 | Borrower (Name)<br>Craig-Buff Limited Partnership dba Craig-Buff Limited Partnership |
| SBA Loan Number (10 digits)<br>PLP1618324004 | Lender Computes interest on a 365 day basis. |

Sum of Prior disbursements $40,374.04 + This Disbursement $57,157.19 = Total $97,531.23

The provisions of 18 U.S.C. 1001 and 15 U.S.C. 545 provide certain criminal penalties for making false statements, willfully overvaluing collateral, or other prohibited acts. To induce SBA, directly or indirectly, to participate in this loan, the *Borrower*, subject to these provisions acknowledges receipt of $57,157.19 on October 27, 1998 and certifies (1) that the proceeds at this disbursement will be, and all previous disbursements have been, used in accordance with the Loan Authorization; (2) that there has been no substantial adverse change in financial condition, organization, operations, or fixed assets since application for this loan was filed or since the previous disbursement, and (3) that there are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for this loan.

*Lender* certifies that disbursement of the loan proceeds was made and the loan proceeds were used as set forth below and in accordance with the Loan Authorization *by issuance of joint payee checks as detailed below except checks for cash operating capital, cash to reimburse borrower for evidenced expenditures made after loan approval date for such authorized use of proceeds, or as otherwise directed by the Loan Authorization*, and that construction, paid with loan proceeds as listed below has been completed. **(Any deviation from the Loan Authorization must be authorized in writing by SBA prior to expenditure of the loan funds.)**

See paragraph G of Authorization "Use of Proceeds"

| Subparagraph | Name of Payee | Date and Amount of Payment | Purpose |
|---|---|---|---|
| 3.B.03 | Kalb Construction Company | 10/27/98 $47,257.19 | New Construction |
| 3.B.06 | Craig Buff Limited Partnership | 10/27/98 $9,900.00 | New Construction |

To further induce SBA to participate in the loan, Lender certifies that neither the Lender nor its Associates, officers agents, affiliates or attorneys have charged or will charge or receive, directly or indirectly, any bonus, fee commission, or other payment or benefit, or require a compensating balance, Certificate of Deposit, or other security in connection with making or servicing of this loan (other than those reported on SBA Forms 4 or 159 "Compensation Agreement). It is understood that all fees not approved by SBA are prohibited, except as may be specifically permitted by the Loan Authorization, SBA regulations or the SBA Form 750 "Guaranty Agreement".

| Lender | Borrower |
|---|---|
| AT&T Small Business Lending Corporation | Craig-Buff Limited Partnership |
| By: [signature] Kim Hellweg, Loan Closer | By: [signature] Harsh Sidhu, General Partner |
| Date 10/27/98 | Date 10/27/98 |

This Certification must be signed and returned to the SBA immediately after each disbursement. If there is a large number of checks, itemize on separate sheets, sign and attach hereto.

| SBA Review By | Title | Date |
|---|---|---|
| | | |

The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this information collection, please contact Chief, Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

SBA Form 1050 (5-91) REF 70 50 Use 4-89 Edition Until Exhausted. YELLOW to SBA, PINK to Lender, BLUE to Borrower

CCAN: 25339

# U.S. Small Business Administration
## Settlement Sheet

OMB APPROVAL NO.: 3245-0200
EXPIRATION DATE: 3/31/95

| Lender (Name and Address - Include Zip Code) | Borrower (Name) |
|---|---|
| AT&T Small Business Lending Corporation<br>P.O. Box 440, 2 Gatehall Drive<br>Parsippany, NJ 07054-0440 | Craig-Buff Limited Partnership dba Craig-Buff Limited Partnership |
| SBA Loan Number (10 digits)<br>PLP1618324004 | Lender Computes interest on a 365 day basis. |

Sum of Prior disbursements $97,531.23 + This Disbursement $79,541.32 = Total $177,072.55

The provisions of 18 U.S.C. 1001 and 15 U.S.C. 545 provide certain criminal penalties for making false statements, willfully overvaluing collateral, or other prohibited acts. To induce SBA, directly or indirectly, to participate in this loan, the *Borrower*, subject to these provisions acknowledges receipt of $79,541.32 on November 13, 1998 and certifies (1) that the proceeds at this disbursement will be, and all previous disbursements have been, used in accordance with the Loan Authorization, (2) that there has been no substantial adverse change in financial condition, organization, operations, or fixed assets since application for this loan was filed or since the previous disbursement, and (3) that there are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for this loan.

*Lender* certifies that disbursement of the loan proceeds was made and the loan proceeds were used as set forth below and in accordance with the Loan Authorization *by issuance of joint payee checks as detailed below except checks for cash operating capital, cash to reimburse borrower for evidenced expenditures made after loan approval date for such authorized use of proceeds, or as otherwise directed by the Loan Authorization*, and that construction, paid with loan proceeds as listed below has been completed. **(Any deviation from the Loan Authorization must be authorized in writing by SBA prior to expenditure of the loan funds.)**

See paragraph G of Authorization "Use of Proceeds"

| Subparagraph | Name of Payee | Date and Amount of Payment | Purpose |
|---|---|---|---|
| 3.B.06 | Kalb Construction Company | 11/13/98 $79,541.32 | New Construction |

To further induce SBA to participate in the loan, Lender certifies that neither the Lender nor its Associates, officers agents, affiliates or attorneys have charged or will charge or receive, directly or indirectly, any bonus, fee commission, or other payment or benefit, or require a compensating balance, Certificate of Deposit, or other security in connection with making or servicing of this loan (other than those reported on SBA Forms 4 or 159 "Compensation Agreement"). It is understood that all fees not approved by SBA are prohibited, except as may be specifically permitted by the Loan Authorization, SBA regulations or the SBA Form 750 "Guaranty Agreement".

Lender
AT&T Small Business Lending Corporation
By: [signature]
Kim Hellweg, Loan Closer
Date 11/13/98

Borrower
Craig-Buff Limited Partnership
By: [signature]
Harsh Sidhu, General Partner
Date 11/13/98

This Certification must be signed and returned to the SBA immediately after each disbursement. If there is a large number of checks, itemize on separate sheets, sign and attach hereto.

| SBA Review By | Title | Date |
|---|---|---|
| | | |

The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this information collection, please contact Chief, Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

SBA Form 1050 (5-91) REF 70 50 Use 4-89 Edition Until Exhausted.

YELLOW to SBA, PINK to Lender, BLUE to Borrower

CCAN: 25339

# U.S. Small Business Administration
## Settlement Sheet

OMB APPROVAL NO.: 3245-0200
EXPIRATION DATE: 3/31/95

| | |
|---|---|
| Lender (Name and Address - Include Zip Code)<br>AT&T Small Business Lending Corporation<br>P.O. Box 440, 2 Gatehall Drive<br>Parsippany, NJ 07054-0440 | Borrower (Name)<br>Craig-Buff Limited Partnership dba Craig-Buff Limited Partnership |
| SBA Loan Number (10 digits)<br>PLP1618324004 | Lender Computes interest on a 365 day basis. |

Sum of Prior disbursements $177,072.55 + This Disbursement $29,188.49 = Total $206,261.04

The provisions of 18 U.S.C. 1001 and 15 U.S.C. 545 provide certain criminal penalties for making false statements, willfully overvaluing collateral, or other prohibited acts. To induce SBA, directly or indirectly, to participate in this loan, the *Borrower*, subject to these provisions acknowledges receipt of $29,188.49 on December 17, 1998 and certifies (1) that the proceeds at this disbursement will be, and all previous disbursements have been, used in accordance with the Loan Authorization, (2) that there has been no substantial adverse change in financial condition, organization, operations, or fixed assets since application for this loan was filed or since the previous disbursement, and (3) that there are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for this loan.

*Lender* certifies that disbursement of the loan proceeds was made and the loan proceeds were used as set forth below and in accordance with the Loan Authorization ***by issuance of joint payee checks as detailed below except checks for cash operating capital, cash to reimburse borrower for evidenced expenditures made after loan approval date for such authorized use of proceeds, or as otherwise directed by the Loan Authorization***, and that construction, paid with loan proceeds as listed below has been completed. **(Any deviation from the Loan Authorization must be authorized in writing by SBA prior to expenditure of the loan funds.)**

See paragraph G of Authorization "Use of Proceeds"

| Subparagraph | Name of Payee | Date and Amount of Payment | Purpose |
|---|---|---|---|
| 3.B.03/3.B.05 | Kalb Construction Company | 12/17/98 $29,188.49 | New Construction |

To further induce SBA to participate in the loan, Lender certifies that neither the Lender nor its Associates, officers agents, affiliates or attorneys have charged or will charge or receive, directly or indirectly, any bonus, fee commission, or other payment or benefit, or require a compensating balance, Certificate of Deposit, or other security in connection with making or servicing of this loan (other than those reported on SBA Forms 4 or 159 "Compensation Agreement). It is understood that all fees not approved by SBA are prohibited, except as may be specifically permitted by the Loan Authorization, SBA regulations or the SBA Form 750 "Guaranty Agreement".

Lender

AT&T Small Business Lending Corporation

By: [signature] Kim Hellweg, Loan Closer

Date 12/17/98

Borrower

Craig-Buff Limited Partnership

By: [signature] Harsh Sidhu, General Partner

Date 12/17/98

This Certification must be signed and returned to the SBA immediately after each disbursement. If there is a large number of checks, itemize on separate sheets, sign and attach hereto.

| SBA Review By | Title | Date |
|---|---|---|
| | | |

The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this information collection, please contact Chief, Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

SBA Form 1050 (5-91) REF 70 50 Use 4-89 Edition Until Exhausted.

YELLOW to SBA, PINK to Lender, BLUE to Borrower

CCAN: 25339

## U.S. Small Business Administration
## Settlement Sheet

OMB APPROVAL NO.: 3245-0200
EXPIRATION DATE: 3/31/95

| | |
|---|---|
| Lender (Name and Address - Include Zip Code)<br>Newcourt Small Business Lending Corporation<br>P.O. Box 440, 2 Gatehall Drive<br>Parsippany, NJ 07054-0440 | Borrower (Name)<br>Craig-Buff Limited Partnership dba Craig-Buff Limited Partnership |
| SBA Loan Number (10 digits)<br>PLP1618324004 | Lender Computes interest on a 365 day basis. |

Sum of Prior disbursements $206,261.04 + This Disbursement $87,738.96 = Total $294,000.00

The provisions of 18 U.S.C. 1001 and 15 U.S.C. 545 provide certain criminal penalties for making false statements, willfully overvaluing collateral, or other prohibited acts. To induce SBA, directly or indirectly, to participate in this loan, the *Borrower*, subject to these provisions acknowledges receipt of $87,738.96 on February 8, 1999 and certifies (1) that the proceeds at this disbursement will be, and all previous disbursements have been, used in accordance with the Loan Authorization, (2) that there has been no substantial adverse change in financial condition, organization, operations, or fixed assets since application for this loan was filed or since the previous disbursement, and (3) that there are no liens or encumbrances against the real or personal property securing the loan except those disclosed in the application for this loan.

*Lender* certifies that disbursement of the loan proceeds was made and the loan proceeds were used as set forth below and in accordance with the Loan Authorization *by issuance of joint payee checks as detailed below except checks for cash operating capital, cash to reimburse borrower for evidenced expenditures made after loan approval date for such authorized use of proceeds, or as otherwise directed by the Loan Authorization*, and that construction, paid with loan proceeds as listed below has been completed. **(Any deviation from the Loan Authorization must be authorized in writing by SBA prior to expenditure of the loan funds.)**

See paragraph G of Authorization "Use of Proceeds"

| Subparagraph | Name of Payee | Date and Amount of Payment | Purpose |
|---|---|---|---|
| 3.B.15 | Newcourt Small Business Lending Corporation | 02/08/1999 $4,566.87 | Interim Interest |
| 3.B.12 | Newcourt Small Business Lending Corporation | 02/08/1999 $1,102.50 | Additional SBA Fee due |
| 3.B.06 | Ryko Manufacturing Company | 02/08/1999 $82,069.59 | Machinery/Equipment |

To further induce SBA to participate in the loan, Lender certifies that neither the Lender nor its Associates, officers agents, affiliates or attorneys have charged or will charge or receive, directly or indirectly, any bonus, fee commission, or other payment or benefit, or require a compensating balance, Certificate of Deposit, or other security in connection with making or servicing of this loan (other than those reported on SBA Forms 4 or 159 "Compensation Agreement). It is understood that all fees not approved by SBA are prohibited, except as may be specifically permitted by the Loan Authorization, SBA regulations or the SBA Form 750 "Guaranty Agreement".

| Lender | Borrower |
|---|---|
| Newcourt Small Business Lending Corporation | Craig-Buff Limited Partnership |
| By: [signature] Kim Hellweg, Loan Closer | By: [signature] Harsh Sidhu, General Partner |
| Date 2/8/99 | Date 2/8/99 |

This Certification must be signed and returned to the SBA immediately after each disbursement. If there is a large number of checks, itemize on separate sheets, sign and attach hereto.

| SBA Review By | Title | Date |
|---|---|---|
| | | |

The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this information collection, please contact Chief, Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

SBA Form 1050 (5-91) REF 70 50 Use 4-89 Edition Until Exhausted. YELLOW to SBA, PINK to Lender, BLUE to Borrower

EXHIBIT 5

U.S. SMALL BUSINESS ADMINISTRATION
NEVADA DISTRICT OFFICE
400 SOUTH FOURTH STREET SUITE 250
LAS VEGAS, NV 89101-2940
702-388-6611 • 702-388-6469 (FAX)

July 27, 2004

FAX Number (702) 966-5848

Nevada Title Company
Attn: Lauren Fisher
2500 N Buffalo, Suite 160
Las Vegas, NV 89128

RE: ESCROW NO: **04-02-1884-DTL**
PROPERTY: 4620 East Russell Road, Las Vegas, NV

Dear Ms. Fisher:

The following information is submitted regarding the amount necessary to pay the subject loans in full as of July 29, 2004. Pursuant to our telephone conversation on July 27, 2004 you indicated to me that there are three Deeds of Trust on this property. The following information pretends to UCC liens on AT&T Commercial and New Ventures/U.S. Small Business Administration: Please reference SBA name Turtle Stop #12 and loan number 89649735 10 on check:

| | | |
|---|---|---|
| Principal Balance | $1,497,916.70 | |
| Accrued Interest | $265,726 30 | |
| Total | | $1,763,643.62 |
| Daily Interest Accrual | $303.19 | |

The third Deed of Trust is held by CIT Small Business Lending Corp; loan name Craig-Buff-CIT loan number 005-25339-901 and SBA loan number 16183240-04. Please send payment CIT Small Business Lending Corp One CIT Drive, Suite 4321 Livingston, New Jersey 07039. This loan is being serviced by the bank therefore the payments needs to be made payable to them in order for the lien to be recorded accordingly. Point of contact is Mark Jones phone number (800) 453-3548, option 1, extension 6023 if you need further assistance.

| | | |
|---|---|---|
| Principal Balance | $266,411.37 | |
| Late Charges & Expenses | $30,784.57 | |
| Accrued Interest | $14,919.03 | |
| Total | | $312,209.85 |
| Daily Interest Accrual | $47.44 | |

The funds submitted should be in the form of a cashier's check, postal money order, or the like. Also, there should be three days of interest added in the check to allow enough time for the check to be received by this office.

Page 2.
Escrow Number 04-02-1884-DTL

Unless otherwise requested, after the routine audit of the account, all items of collateral, with satisfactions as applicable, will automatically be forwarded to Nevada Title Company by certified mail.

If I can be of further service to you regarding this matter, do not hesitate to contact me.

Sincerely,

Delia Gomez
Loan Specialist
Economic Development
(702) 388-6674