**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CRAIG-BUFF LIMITED PARTNERSHIP, a Nevada Limited Partnership, | ) | |
| Plaintiff, | ) | No. 05-507C (Senior Judge Merow) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REVISIONS TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to RCFC 56(h)(2), plaintiff, Craig-Buff Limited Partnership ("Craig-Buff"), submits the following responses and proposed revisions to defendant's proposed findings of uncontroverted fact.

1. Plaintiff Craig-Buff Limited Partnership ("Craig-Buff") was a Limited Partnership doing business in the State of Nevada. Comp. General Allegations ¶1.[1]

**Craig-Buff's Response: Agree.**

2. In October 1997, Craig-Buff borrowed $799,732 from the AT&T Small Business Lending Corporation, now CIT Small Business Lending Corporation ("CIT"). Comp. ¶4. In November 1998, Craig-Buff borrowed $654,000 from New Ventures Capital Development Company ("New Ventures"), pursuant to section 504 of the Small Business Investment Act of 1958 (the "504 program"). See 15 U.S.C. §§695-697(f) (authorizing development company program 504 loans); Comp.¶5

[1] "Comp. ¶___" refers to plaintiff's complaint. "Comp. Ex. ___" refers to exhibits attached to plaintiff's complaint. "A ___" refers to the appendix accompanying defendant's motion for summary judgment. We note that plaintiff's complaint contains two paragraphs numbered "1", "2" and "3" in both the "Jurisdiction and Venue" and "General Allegations" portion of the complaint. Where applicable, we include with our citation a reference to these specific portions of the complaint.

**Craig-Buff's Response: Agree.**

3. SBA established the 504 program "to foster economic development, create and preserve job opportunities, and stimulate growth, expansion, and modernization of small businesses." 13 C.F.R. §120.800. The 504 loans typically involve projects requiring "long-term fixed-asset financing for small businesses." 13 C.F.R. §120.2(c).

**Craig-Buff's Response: Agree.**

4. Both the loan with CIT and the loan with New Ventures were assigned to SBA, which consolidated and serviced both loans. Comp. ¶6.

**Craig-Buff's Response: Agree.**

5. On or about October 28, 1997, Craig-Buff borrowed an additional $245,000 from CIT. Comp. ¶7. Pursuant to section 7(a) of the Small Business Act, 15 U.S.C. §636(a) (authorizing general business program loans pursuant to section 7(a) of the Small Business Act), SBA guaranteed 75 percent of this loan. A1. Plaintiff refers to this loan as "the CIT loan", Comp. ¶7, and for purposes of this motion defendant will use the same term. The amount of the CIT loan subsequently was increased to $294,000. Comp. ¶9.

**Craig-Buff's Response: Agree.**

6. Section 7(a) loans provide financing for general business purposes and may be either:

(i) A direct loan by SBA;

(ii) An immediate participation loan by a Lender and SBA; or

(iii) A guaranteed (deferred participation) by which SBA guarantees a portion of a loan made by a Lender.

13 C.F.R. §120.2(a).

**Craig-Buff's Response: Agree.**

7. Craig-Buff, CIT, and SBA executed an "Authorization and Loan Agreement" concerning the CIT loan, which set forth obligations of the parties pursuant to the CIT loan. A 1-12. The agreement contained no obligation of SBA to provide to Craig-Buff payoff information on the CIT loan. Id.

**Craig-Buff's Response: Disagree. Defendant over-simplifies the primary issue in this case and fails to recognize the Agreement contained an inherent obligation of SBA to provide accurate payoff information to Craig-Buff.**

**Proposed Revision: Although the Agreement did not explicitly obligate SBA to provide Craig-Buff with payoff information on the CIT loan, the Agreement inherently obligated SBA to provide accurate payoff information concerning the CIT loan to Craig-Buff.**

8. The CIT loan was neither a direct nor immediate participation loan; rather, SBA guaranteed a portion of the CIT loan. Comp. ¶7. A copy of the Authorization and Agreement, which sets forth the SBA's guaranty amount, is included in the appendix to this motion. A 1; see also 13 C.F.R. §120.2(a)(iii) (where SBA issues a guaranteed loan pursuant to section 7(a), "SBA guarantees a portion of a loan made by a Lender").

**Craig-Buff's Response: Disagree. The classification of the CIT loan is inconsistent with SBA's stipulation that the CIT loan was an express agreement between SBA and Craig-Buff.**

**Proposed Revision: Regardless of how the SBA classifies the CIT loan, the CIT loan was assigned to SBA and SBA serviced the CIT loan. As stipulated by the SBA, the CIT loan constituted an express agreement between SBA and Craig-Buff.**

9. Both the SBA loans and the CIT loan were secured by real property and improvements located at 4620 East Russell Road, Las Vegas, Nevada. Comp. ¶11.

**Craig-Buff's Response: Agree.**

10. On or about April 7, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2.5 million. Comp. ¶13. In early June 2004, the prospective purchaser informed Craig-Buff that it was unable to consummate the $2.5 million sale. Comp. ¶16.

**Craig-Buff's Response: Agree.**

11. In response to Craig-Buff's inquiry regarding the "SBA Loans", the SBA informed Craig-Buff that the payoff amount for the SBA loans was $1,763,643.62. Comp. ¶18.

**Craig-Buff's Response: Agree.**

12. On or about July 21, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2,300,000. Comp. ¶21.

**Craig-Buff's Response: Disagree. Defendant fails to provide that Craig-Buff entered into an agreement to sell the property securing the three loans for $2.3 million based on its reliance on the payoff amount initially provided by SBA.**

**<u>Proposed Revision</u>: On or about July 21, 2004, in reliance on the payoff amount provided by SBA, Craig-Buff entered into an agreement to sell the property securing the three loans for $2.3 million.**

13. On or about July 22, 2004, SBA informed Craig-Buff that the payoff figure of $1,763,643.62 did not include the amount to payoff the CIT loan. Comp. ¶22.

**Craig-Buff's Response: Agree.**

14. By letter dated July 27, 2004, SBA informed Nevada Title Company, the escrow agent under the purchase agreement, that the payoff amount for the two SBA consolidated loans was $1,763,643.62, and the payoff amount for the CIT loan was $312,209.85. Comp. ¶23, Comp. Ex. 4.

**Craig-Buff's Response: Agree.**

15. Craig-Buff proceeded with sale of the property pursuant to the agreement identified in DPFUF 12.

**Craig-Buff's Response: Disagree. Defendant suggests that Craig-Buff had an option not to proceed with the sale after it received the proper payoff amount from SBA. This is incorrect. Craig-Buff had a contractual obligation to proceed with the sale of the property despite its discovery that the initial payoff amount provided by SBA was significantly lower than the actual payoff amount.**

**<u>Proposed Revision</u>: Despite its discovery that the initial payoff amount provided by SBA was significantly lower than the actual payoff amount, Craig-Buff was contractually obligated to proceed with the sale of the property for $2.3 million resulting in a financial lose to Craig-Buff.**

Dated this 29th day of September, 2005.

GORDON & SILVER, LTD.

Eric R. Olsen
Nevada Bar No. 3127
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89109
(702) 796-5555
Attorneys for Plaintiff

CERTIFICATE OF FILING

I hereby certify that on September 29, 2005, a copy of the foregoing Plaintiff's Revisions to Defendant's Proposed Findings of Uncontroverted Fact was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Rosemary C. Dittrich



88003-002/366328