No. 05-507C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CRAIG-BUFF LIMITED PARTNERSHIP,
a Nevada Limited Partnership,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY BRIEF

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

TIMOTHY TREANOR
Small Business
Administration

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

October 27, 2005

Attorneys for Defendant

## TABLE OF CONTENTS

Page


DEFENDANT'S REPLY BRIEF . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Craig-Buff Misstates Certain Facts Which It Claims Are Not In Dispute . . . . . . . . . . 2

II. Craig-Buff Now Acknowledges The Existence Of A Written Agreement Among SBA, CIT, And Plaintiff . . . . . . . . . . . . . . . . . . . 7

III. SBA Provided Craig-Buff Accurate Loan Payoff Figures . . . . . . . . . . . . . . . . . . 11

IV. Craig-Buff Has Not Pled, And Cannot Prove, The Intent Required To Establish Its Claim That SBA Violated The Implied Covenant Of Good Faith And Fair Dealings . . . . . . 14

V. Plaintiff's Claim Of Detrimental Reliance Lies In Tort, Not Contract, And Therefore Not Within The Jurisdiction Of The Court . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES


Page(s)

Am-Pro Protective Agency v. United States, 281 F.2d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . 17

Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595 (1994) . . . . . . . . . . . . . . . . . . 15-16

Connors Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 692 (2005) . . . . . . . . . . . . . . . . . 19

Conway v. United States, 56 Fed. Cl. 572 (2003) . . . . . . . . . . . . . . . . . . . . 15

D.V. Gonzalez Elec. & General Contractors, Inc. v. United States, 55 Fed. Cl. 447 (2003) . . . . . . . . . . . . . . . . . . . . 16

Industrias Magromer Cueros v. Pieles, S.A. v. Louisiana Bayou Furs, Inc., 293 F. 3d 912 (5th Cir. 2002) . . . . . . . . . . . . . . . 18

Inner City Broadcasting Corp. v. Cardenas, 554 F. Supp. 42 (D.C.D.C. 1982) rev'd sub nom, Inner City Contracting v. Sanders, 733 F. 2d 154 (D.C. Cir. 1984) . . . . 17-18

Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298 (1976) . . . . . . . . . . 15

Morris v. United States, 33 Fed. Cl. 733 (1995) . . . . . . . . . . . . . . . . . . . 15

Nicholson v. United States, 29 Fed. Cl. 180 (Fed. Cl. 1993) . . . . . . . . . . . . . 10

Office of Personnel Management v. Richmond, 496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . 14

Stokes v. Georgia-Pacific Corp., 894 F.2d 764 (5th Cir. 1990) . . . . . . . . . . . . . 17-19

## TABLE OF AUTHORITIES (Cont.)

### FEDERAL CASES

Page(s)

Torncello v. United States,
231 Ct. Cl. 20, 681 F.2d 756 (1982) . . . . . . . . . . . . 15

Unisys Corp. v. United,
48 Fed. Cl. 451 (2001) . . . . . . . . . . . . . . . . . . 11

United Pacific Ins. Co. v. Roche,
401 F.3d 1362 (Fed. Cir. 2005) . . . . . . . . . . . . . . 14

# INDEX TO APPENDIX


| | Page |
|---|---|
| Transcript of Account (reflecting information printed from agency's database), for CIT loan, dated September 29, 2005 | 1 |
| Transaction Report On Loan Serviced By Lender from CIT to SBA, dated March 31, 2003 | 2 |
| Various checks from CIT to SBA, various dates | 3 |
| Transaction Report On Loan Serviced By Lender from CIT to SBA, dated May 12, 2003 | 5 |
| Various checks from CIT to SBA, various dates | 6 |
| Transaction Report On Loan Serviced By Lender from CIT to SBA, dated July 29, 2003 | 8 |
| Various checks from CIT to SBA, various dates | 9 |
| Transaction Report On Loan Serviced By Lender from CIT to SBA, dated August 26, 2004 | 12 |
| Various checks from CIT to SBA, various dates | 13 |
| Transaction Report On Loan Serviced By Lender from CIT to SBA, dated September 15, 2003 | 14 |
| Various checks from CIT to SBA, various dates | 15 |
| page 17 omitted | |
| Transcript of Account (reflecting information printed from agency's database), for consolidated SBA loan, dated October 12, 2005 | 18 |
| Various checks from Craig-Buff to SBA, various dates | 19 |
| SBA Checks Received Report dated August 12, 2004 (with checks from Nevada Title attached) | 28 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CRAIG-BUFF LIMITED PARTNERSHIP, a Nevada Limited Partnership, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-507C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY BRIEF

Defendant respectfully submits the following reply brief in response to Craig-Buff Limited Partnership's ("Craig-Buff") opposition to our motion for summary judgment.

INTRODUCTION

In our motion for summary judgment, we established that (1) an express, not implied, agreement among CIT, SBA, and Craig-Buff existed regarding the CIT loan, and that the agreement did not require SBA to provide Craig-Buff payoff information about the loan; (2) when plaintiff asked SBA for the payoff amount for "the SBA loans", SBA was correct in providing Craig-Buff the payoff figure for the two loans which SBA had acquired and consolidated, and not the payoff figure for the CIT loan, which SBA had guaranteed but not acquired; (3) plaintiff failed to set forth a <u>prima</u> <u>facie</u> case that SBA violated the implied covenant of good faith and fair dealing because it failed to allege that SBA committed specific acts of malice or had the intent to injure and the agreement among the parties imposed no duty upon to provide the requested information, and (4) plaintiff's

detrimental reliance claim sounded exclusively in tort such that this Court lacked jurisdiction to consider it.

In its opposition to our motion, Craig-Buff admits that it entered into a written agreement with SBA and CIT and that the agreement specifically did not obligate SBA to provide Craig-Buff payoff information concerning the CIT loan. Craig-Buff argues instead that the Court should infer such an obligation from provisions in the agreement which impose certain obligations upon Craig-Buff. Craig-Buff likewise argues that SBA improperly excluded the CIT loan from a payoff figure for "the SBA loans" because Craig-Buff was repaying the CIT loan to SBA and that SBA subsequently told Craig-Buff about the amount due to CIT, which, according to plaintiff, demonstrates that SBA knew that the original figure was wrong. Craig-Buff suggests that the question of whether SBA had actual malice necessary to establish a claim of breach of the implied covenant of good faith and fair dealing is a fact question which should not be resolved by summary judgment. Finally, Craig-Buff argues that its claim of detrimental reliance is grounded in contract, not tort. As we discuss below, Craig-Buff's arguments should be rejected.

## I. Craig-Buff Misstates Certain Facts Which It Claims Are Not In Dispute

In its Statement of Facts, Craig-Buff sets forth facts it believes "are not disputed." Pl. Res. 1. While we do not

dispute many of plaintiff's factual assertions, certain factual statements are incorrect or are not supported by the record.

For example, Craig-Buff alleges that "[t]he principal amount on the CIT Loan was disbursed to Craig-Buff by the SBA in several installments as noted on the [SBA] Settlement Sheets." Pl. Res. 2. This is incorrect for several reasons. First, the lender on that loan was AT&T Small Business Lending Corporation ("AT&T"), now CIT Small Business Lending Corporation ("CIT"), not SBA. SBA only guaranteed the CIT loan. DPFUF 2, 5. Second, while Craig-Buff cites the settlement sheets as evidence that SBA disbursed the CIT loan funds to plaintiff, these sheets do not indicate in any way that SBA disbursed the funds. Pl. Res. A 24-28. Third, in actuality, the settlement sheets identify AT&T as the lender, are signed by representatives of AT&T and Craig-Buff, and contain a certification by the lender "that disbursement of the loan proceeds was made . . . <u>by issuance of joint payee checks as detailed below</u>." <u>Id</u>. (Emphasis in original). Thus, SBA did not distribute the loan to Craig-Buff.

Craig-Buff also suggests that "[t]he Settlement Sheets indicate that the SBA is to 'participate in the loan,' that the Settlement Sheets are to be returned to the SBA, and that Craig-Buff is to contact the SBA with any questions concerning the CIT Loan." Pl. Res. 2-3.

Regarding plaintiff's first two allegations (SBA "participation" and return of forms to SBA), in actuality, the settlement sheets provide that the "Certification must be signed and returned to the SBA immediately after each disbursement." Pl. Res. A 24-28. The "certification" referenced in the settlement sheets is the lender's certification noted above (regarding disbursement of loan proceeds), as well as a certification by the lender to "further induce SBA to participate in the loan" that neither the lender nor its associates "have charged or will be charged or receive, directly or indirectly, any bonus, fee commission, or other payment or benefit . . . in connection with the making or servicing of this loan." Id. SBA's participation is that of guarantor. It neither lends nor disburses the loan funds. Finally, we note that the settlement sheets identify the specific carbon copies that must be provided to all parties SBA.

Regarding Craig-Buff's third allegation, that the settlement sheets instruct Craig-Buff "to contact the SBA with any questions concerning the CIT Loan," the settlement sheets contain no such instruction. Pl. Res. A 24-28. Rather the settlement sheets merely invite the lendor or borrower to contact either SBA or the Office of Management and Budget ("OMB") if it has any questions regarding the Paperwork Reduction Act as it concerns the settlement sheets. Id.

Specifically, the settlement sheets provide:

> The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this Information collection, please contact Chief, Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

Id.

This narrow and specific reference to questions or comments regarding the Paperwork Reduction Act in no way equates to the general instruction suggested by Craig-Buff, i.e., that the settlement sheets direct plaintiff to contact SBA with "questions concerning the CIT loan." Indeed, were plaintiff's interpretation correct, then this clause of the settlement sheets likewise directed Craig-Buff to contact OMB with any "questions concerning the CIT loan." This, of course, would be an absurd result.

Regarding Craig-Buff's dealings with a third-party purchaser of the property securing the loans, Pl. Res. 3, the Government has no first hand knowledge of those dealings. Rather, for purposes of our motion for summary judgment we have assumed that: (1) on or about April 7, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2.5 million, DPFUF 10; Comp. ¶ 13, (2) in early June 2004,

the prospective purchaser informed Craig-Buff that it was unable to consummate the $2.5 million sale, DPFUF 10; Comp. ¶ 16, (3) on or about July 21, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2,300,000, DPFUF 12; Comp. ¶ 21, and (4) Craig-Buff proceeded with sale of the property pursuant to the agreement identified in DPFUF 12.

Craig-Buff alleges that "[o]n or about June 23, 2004, in response to Craig-Buff's request for a pay off amount on all SBA Loans, the SBA indicated to Craig-Buff that the total pay-off amount on all SBA Loans was" $1,763,643.62. Pl. Res. 3. As noted in our motion for summary judgment, there are two types of loans, the SBA loans which were consolidated and assigned to SBA, and the CIT loan, which was held by CIT. DPFUF 2, 4-5, 8-9. Plaintiff once again attempts to lump together these two distinct types of loans collectively as the SBA loans. When Craig-Buff contacted SBA regarding the SBA loans, as opposed to the CIT loan, it received information concerning the SBA loans, not the CIT loan. DPFUF 11, 13.

Plaintiff alleges that "[o]n or about July 22, 2004, the SBA contacted Craig-Buff to indicate that the SBA had omitted the CIT Loan from its Initial Pay off Amount." Pl. Res. 3-4. Plaintiff use of the word "omitted" is incorrect. Indeed, plaintiff offers no evidence as support for its allegation. As established in our motion for summary judgment, plaintiff

initially requested and received from SBA information concerning the SBA loans only, not the CIT loan. Def. Br. 5; DPFUF 11, 13.

II. Craig-Buff Now Acknowledges The Existence Of A Written Agreement Among SBA, CIT, And Plaintiff

Plaintiff's complaint contains no reference to the existence of a written agreement among SBA, CIT, and Craig-Buff. Rather, Craig-Buff's complaint alleges breach of an implied-in-fact contract. Comp. ¶ 30-36. In our motion for summary judgment, we established that Craig-Buff's implied-in-fact contract claim should be dismissed because there exists an express agreement among CIT, SBA and Craig-Buff concerning the CIT loan, and the agreement, entitled "authorization and Loan Agreement," contains no duty or obligation of SBA to provide to plaintiff payoff information.

Craig-Buff's response to our complaint admits the existence of this agreement, Pl. Res. 2,[1] and that "the Loan Agreement does

[1] In a footnote, Craig-Buff requests "leave to amend its Complaint in order to add a claim for breach of express contract." Pl. Res. 5 n.1. Plaintiff's request should be denied. It cannot reasonably be disputed that Craig-Buff was aware or should have been aware of the existence of the agreement at the time it filed its complaint, given that Craig-Buff is a party to the agreement. As such, in drafting its complaint, Craig-Buff presumably made a strategic decision not to reference or plead the existence of the express agreement. Plaintiff offers no credible excuse as to why it did not raise the express agreement in its complaint, other than to suggest it did not do so because the SBA allegedly denied the existence of the agreement. Id. To the extent Craig-Buff disagreed with the position it alleges was taken by the agency, it was incumbent upon Craig-Buff to raise that issue in its complaint. Having failed to do so, Craig-Buff should not now be allowed to amend

not expressly provide that SBA has a duty to provide accurate payoff information." Pl. Res. 7. However, Craig-Buff argues that SBA's alleged duty to provide payoff information concerning the CIT loan should be inferred from the agreement because "Craig-Buff had the obligation to make timely payments in the proper amount on the loan, notify the SBA of intent to prepay part of or all of the loan, reimburse SBA for any expenses incurred in the making and administration of the loan, and maintain accurate account records relating to Craig-Buff's financial condition." Pl. Res. 6-7. According to Craig-Buff, plaintiff, "as borrower, cannot be expected to fulfill its various obligations of making timely payments and keeping accurate account records without having information about the actual payoff amount of the CIT loan." Pl. Res. 7.

Examination of the loan agreement among CIT, SBA, and Craig-Buff reveals that it does not contain certain of the provisions alleged by plaintiff. For example, there is no provision requiring Craig-Buff to notify SBA that it intends to prepay the loan. The relevant provision, 3.A.03 (page 4 of the loan agreement) provides:

---

its complaint. In the alternative, we note that Craig-Buff's response to our motion for summary judgment sets forth its newly-raised allegations regarding the SBA's alleged implied duty that allegedly arises out of terms of the express agreement. As such, it is unnecessary for Craig-Buff now to take the additional step of amending its complaint to include assertions already raised in its responsive brief.

> Borrower shall provide Holder with written notice of intent to prepay part or all of this loan at least 21 calendar days prior to the prepayment date.

A 4(emphasis added). Throughout the life of the loan, CIT, not SBA, was the holder of the note.

Similarly, Craig-Buff is incorrect that the agreement imposes upon it the obligation to reimburse SBA for administrative expenses. Pursuant to section 4.B. of the loan agreement, Craig-Buff agreed to reimburse CIT, not SBA, for the cost of administering the loan:

> Borrower will, on demand, reimburse Lender for any and all expenses incurred, or which may be hereafter incurred, by Lender from time to time in connection with or by reason of Borrower's application for, and the making and administration of the loan.

A 5 (emphasis added). The first page of the loan agreement clearly demarks AT&T – now CIT – as "Lender." A 1 .

As secondary support for its theory of implied obligation, Craig-Buff points to language it purports is contained in the settlement sheets, to the effect that "any questions concerning the CIT loan should be directed to SBA." Pl. Res. 7. Notwithstanding Craig-Buff's assertion to the contrary, the settlement sheets simply do not "provide that any questions concerning the CIT loan should be directed to SBA." Pl. Res. 7. As established in section I of this brief, the settlement sheets merely invited the lender or the borrower to contact SBA or OMB

for questions regarding application of the Paperwork Reduction Act to the settlement sheets. Even assuming that the settlement sheets contained information that was at all relevant to the issue, it would be wholly inappropriate to rely upon the settlement sheets to read into the express agreement of the parties an implied duty or obligation that is not contained in the agreement itself. See, e.g., Nicholson v. United States, 29 Fed. Cl. 180, 191 (Fed. Cl. 1993) (meaning of unambiguous contract terms determined from four corners of contract without resort to extrinsic evidence).

Assuming for the sake of argument Craig-Buff's characterizations of the loan agreement and settlement sheets were accurate, plaintiff's conclusion does not proceed from its premise. Any requirement that Craig-Buff keep accurate books, make timely payments, and provide notification of its intent to prepay the loan imposes obligations upon Craig-Buff, not SBA. Craig-Buff's argument that it would be impossible to fulfill its alleged contractual obligations if SBA did not provide, upon demand, the CIT loan payoff amount, ignores the existence of amortization tables and other usual and customary accounting devices used by borrowers to track financial obligations, including the amounts remaining on any outstanding loan balances.

Craig-Buff argues that, "[a]t best, there is an ambiguity surrounding the issue of whether the Loan Agreement imposed an obligation upon SBA to provide payoff information such that a question of fact exists." Pl. Res. 7. Plaintiff's argument misses the mark. Craig-Buff fails to identify specifically the basis for its conclusion that the loan agreement is ambiguous. To the extent that ambiguity is based upon the complete absence of any language imposing a duty of the SBA to provide payoff information, this would not constitute an ambiguity. Rather, it would constitute a lack of ambiguity, i.e., there exists no such duty. Whether contractual documents contain an ambiguity presents not a question of fact, but, rather, a question of law. Unisys Corp. v. United, 48 Fed. Cl. 451, 454 (2001) ("Whether a contract provision is ambiguous is a question of law"). Craig-Buff's suggestion that the Court should deny our motion for summary judgment upon this basis should be rejected.

III. SBA Provided Craig-Buff Accurate Loan Payoff Figures

Craig-Buff argues that "[i]t is undisputed that SBA initially told Craig-Buff that the payoff amount of all of its SBA loans was $1,763,643.62." Pl. Res. 8. This is incorrect. As established in our motion for summary judgment, and as discussed in section I above, SBA provided Craig-Buff with the information it requested regarding the consolidated SBA loans, which were serviced by SBA. Those loans do not include the CIT

loan, and information regarding the CIT loan would not have been responsive to the plaintiff's request for SBA loan payoff information. Craig-Buff's mischaracterization of our argument set forth in our motion for summary judgment should be rejected.

Craig-Buff argues that SBA conceded that its initial payoff figure was incorrect when it provided Craig-Buff information regarding the CIT loan. Pl. Res. 8. Plaintiff mischaracterizes statements made in our motion for summary judgment. We did not state, as suggested by plaintiff, that SBA "contacted Craig-Buff when SBA realized its own error," rather, we stated that "SBA informed Craig-Buff that the payoff figure of $1,763.643.62 did not include the amount to payoff the CIT loan." Def. Br. 5. The fact that SBA disabused Craig-Buff of its apparent belief that it owed nothing on the CIT loan does not constitute evidence that SBA provided inaccurate information to Craig-Buff.

Plaintiff argues that the CIT loan was indeed one of the SBA loans and its balance should have been included in the response to Craig-Buff's original request. Plaintiff alleges that "SBA serviced both the consolidated loans and the CIT loan," and that "[n]ot only was the principal amount on the CIT loan disbursed to Craig-Buff by the SBA, but also all payments on the CIT loan were made directly to SBA." Pl. Res. 8.

Plaintiff offers no support for its assertion that the CIT loan was an SBA loan or that it was serviced by SBA. Indeed,

plaintiff's complaint contains no such allegations. Moreover, documents attached to our reply brief establish that Craig-Buff submitted its loan payments for the CIT loan to CIT, not SBA. For example, attached to our reply brief is a Transcript of Account for the CIT loan, with accompanying checks, establishing that payments made to SBA on the CIT loan came from CIT, not Craig-Buff. A 1-16. By way of comparison, we note that Craig-Buff did submit directly to SBA its loan payments on the SBA consolidated loans which had been assigned to SBA. See A 18-27 (transcript of account for consolidated loans with accompanying checks from Craig-Buff).

Craig-Buff suggests that the dispute regarding whether SBA provided incorrect information to it raises a material issue of fact that precludes summary judgment. Pl. Res. 8. This issue of fact is not material. Assuming for the sake of argument that SBA provided incorrect information to Craig-Buff and subsequently corrected that information, these alleged facts would not present a proper cause of action because, as established above, the agreement among the parties did not contain any duty of SBA to provide such information. Moreover, to the extent plaintiff frames its argument as breach of the implied covenant of good faith and fair dealings, or detrimental reliance, as we discuss below, neither theory provides Craig-Buff a proper basis upon which to recover in this Court.

Craig-Buff argues that our reliance upon Office of Personnel Management v. Richmond, 496 U.S. 414, 429 (1990), and United Pacific Ins. Co. v. Roche, 401 F.3d 1362 (Fed. Cir. 2005), (for the proposition that SBA's allegedly supplying incorrect information to Craig-Buff does not form a proper basis for a cause of action) is misplaced because those cases concern application of equitable estoppel whereas this case is based upon an alleged breach of contract. Pl. Res. 9. Plaintiff's argument misses the mark.

As established above, Craig-Buff does not have a proper claim for breach of contract, as the contract upon which plaintiff bases its claim does not contain the duty that plaintiff claims was breached. We relied upon Richmond and United Pacific for the proposition that, assuming the Government provided incorrect information, that fact alone would not provide a proper basis for a claim against the United States. Plaintiff concedes in its responsive brief that it raises no claim based upon equitable estoppel. Pl. Res. 9. Because, as a matter of law, Craig-Buff's breach of contract claim fails, plaintiff is not entitled to any relief.

IV. Craig-Buff Has Not Pled, And Cannot Prove, The Intent Required To Establish Its Claim That SBA Violated The Implied Covenant Of Good Faith And Fair Dealings

In our motion for summary judgment, we established that, for plaintiff properly to state a claim that SBA violated the

covenant of good faith and fair dealings, "plaintiffs must allege facts which if proved would constitute malice or an intent to injure." Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994).

As noted by the Court in Conway v. United States, 56 Fed. Cl. 572, 578 (2003), to establish a claim that the Government has breached the duty of good faith and fair dealings, "[p]laintiff must demonstrate "facts constituting malice or, in other words, a specific intent to injure the plaintiff on the part of a government official." (Quoting Morris v. United States, 33 Fed. Cl. 733, 752 (1995) (citing Torncello v. United States, 231 Ct. Cl. 20, 681 F.2d 756, 771 (1982); Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298, 1302 (1976))).

Craig-Buff does not directly challenge this assertion. Res. 9-10. Instead, Craig-Buff summarily asserts that because it "has alleged that SBA acted in bad faith when it failed to disclose the correct payoff amount on all of the SBA loans, there exists a question of fact regarding SBA's intent." Pl. Res. 10. According to plaintiff, the alleged question of fact cannot be resolved on summary judgment. Pl. Res. 9.

Here, Craig-Buff mischaracterizes its own complaint. No portion of its complaint, and in particular its claim for breach of the implied covenant of good faith and fair dealing, asserts that SBA acted in bad faith or with intent to injure Craig-Buff.

Comp. ¶¶ 37-41. Craig-Buff merely asserts that SBA informed it on June 23, 2004, that the payoff amount on the SBA loans was $1,763,643.62, Comp. ¶ 18, and that on July 22, 2004, SBA informed Craig-Buff that the previous payoff figure did not include payoff of the CIT loan. Comp. ¶ 22.

Neither Craig-Buff's complaint nor its response to our motion for summary judgment asserts malice, bad faith, or intent to injure by SBA. Craig-Buff merely alleges the existence of an implied contract with an implied covenant of good faith and fair dealing (comp. ¶ 38), that Craig-Buff relied upon SBA's payoff figures and that by allegedly providing inaccurate information SBA breached the implied covenant of good faith and fair dealing (Comp. ¶ 39), and that as a result of SBA's actions, Craig-Buff has suffered damages (Comp. ¶ 40).

Craig-Buff's failure to allege facts that, if proved, would constitute malice or specific intent to injure is fatal to plaintiff's claim here. See D.V. Gonzalez Elec. & General Contractors, Inc. v. United States, 55 Fed. Cl. 447, 457 (2003) ("in order for Count II to survive defendant's motion to dismiss for failure to state a claim, plaintiff must allege facts which if proved would constitute malice or a specific intent to injure the plaintiff) (citing Asco-Falcon II, 32 Fed. Cl. at 604). Even if Craig-Buff can be viewed as having raised an allegation of intent, its allegations alone are insufficient to raise a

genuine issue of fact so as to preclude summary judgment on the question of bad faith conduct by SBA. Am-Pro Protective Agency v. United States, 281 F.2d 1234, 1240-43 (Fed. Cir. 2002). Moreover, Craig-Buff's factual allegations concern mistake, not malice. Accordingly, Craig-Buff's claim for breach of the covenant of good faith and fair dealing should be dismissed.

V. Plaintiff's Claim Of Detrimental Reliance Lies In Tort, Not Contract, And Therefore Not Within The Jurisdiction Of The Court

In our motion for summary judgment, we established that Craig-Buff's claim of detrimental reliance sounds in tort, not contract, and, accordingly, this Court lacks jurisdiction to consider it. Specifically, plaintiff alleges:

> In reliance on the SBA's misrepresentations and failure to disclose the CIT Loan balance, Craig-Buff decreased the Purchase Price of the Property by Two Hundred Thousand and 00/100 Dollars ($200,000.00), resulting in financial harm and damage to Craig-Buff.

Comp. 44. (Capitalization as in original.)

In attempt to avoid the clear implication of the above-quoted portion of plaintiff's complaint (that Craig-Buff's detrimental reliance claim lies in tort), Craig-Buff argues that its detrimental reliance claim is actually a contract claim. Pl. Res. 11 (citing Inner City Broadcasting Corp. v. Cardenas, 554 F. Supp. 42, 47 (D.C.D.C. 1982), rev'd sub nom, Inner City Contracting v. Sanders, 733 F. 2d 154 (D.C. Cir. 1984); Stokes

v. Georgia-Pacific Corp., 894 F.2d 764, 770 (5th Cir. 1990), and Industrias Magromer Cueros v. Pieles, S.A. v. Louisiana Bayou Furs, Inc., 293 F. 3d 912, 921 (5th Cir. 2002)).

Of course, these decisions from other circuits provide no precedential value to this Court. Moreover, these decisions are readily distinguishable. Common to all is an allegation that defendant made a promise to plaintiff. In Inner City, plaintiff alleged that the Federal Railroad Administration had promised that funds which it had forwarded to plaintiff could be used to leverage funds from a Small Business Investment Corporation. In Stokes, plaintiff contended that defendant had promised him sufficient earnings from a wood-chipping contract to pay for an expensive piece of equipment that defendant asked him to purchase. In Industrias Magromer, the Fifth Circuit, interpreting a Louisiana state statute, concluded that a crucial element of a finding of detrimental reliance in contract was that the defendant had made a promise. 293 F. 3d at 921.

In this case, by way of contrast, Craig-Buff has not asserted that the payoff figure allegedly provided to it by SBA constituted a promise of any sort. Rather, it was instead, according to plaintiff, a "misrepresentation." Comp. ¶ 44. Certainly, SBA could not be said to have "promised" that if Craig-Buff repaid the $1,763,643.62 which it owed upon the consolidated SBA loans, Craig-Buff would not have to repay

amounts owed to CIT. Furthermore, SBA had no authority to absolve Craig-Buff of its obligation to CIT.

Most telling, perhaps, is Craig-Buff's argument that "[e]ssentially, a claim for detrimental reliance is based on promissory estoppel." Pl. Res. 11 (citing Stokes, 894 F.2d at 770). What plaintiff fails to note, however, is that this Court lacks jurisdiction to consider a claim for promissory estoppel. Connors Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 692 (2005) ("It is well settled that the Court of Federal Claims is without jurisdiction to entertain a promissory estoppel claim and this court lacks authority to entertain a plaintiff's cause of action on the basis of promissory estoppel").

Craig-Buff's detrimental reliance claim, reduced to its simplest form, asserted that SBA provided it the wrong payoff figure when Craig-Buff first asked for one, and that it relied upon that figure to its detriment. This is a claim in negligent misrepresentation, not (except to the extent a contract required the party to provide accurate payoff figures) a contract claim.

Moreover, even if the payoff figure which SBA proffered somehow could be construed as a contract, Craig-Buff cannot claim detrimental reliance because it manifestly did not rely upon the SBA payoff figure to determine what to charge for the collateral property. Craig-Buff admits that it attempted to charge $2.5 million for the collateral property, but failed.

Comp. ¶ 16. The ultimate determiner of the collateral property's price was not the payoff amount but the market.

CONCLUSION

For these reasons, and the reasons set forth in our motion, defendant respectfully requests that the Court grant defendant's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

OF COUNSEL:

TIMOTHY TREANOR
Small Business Administration

s/ David B. Stinson
DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0163
Fax: (202) 514-8624

October 27, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on October 27, 2005, a copy of "DEFENDANT'S REPLY BRIEF," "DEFENDANT'S APPENDIX VOLUME ONE TO DEFENDANT'S REPLY BRIEF," "DEFENDANT'S APPENDIX VOLUME TWO TO DEFENDANT'S REPLY BRIEF," "DEFENDANT'S APPENDIX VOLUME THREE TO DEFENDANT'S REPLY BRIEF," "DEFENDANT'S APPENDIX VOLUME FOUR TO DEFENDANT'S REPLY BRIEF" were filed electronically. I understand that notice of these filings will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David B. Stinson
DAVID B. STINSON