# In the United States Court of Federal Claims

No. 05-507C
(Filed February 1, 2006)

| | | |
|---|---|---|
| CRAIG-BUFF LIMITED PARTNERSHIP, a Nevada Limited Partnership, Plaintiff, | * | Summary judgment; implied contract arising out of government loan guarantee; lack of jurisdiction over claims of detrimental reliance and promissory estoppel; dismissal for lack of jurisdiction. |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

*Eric R. Olsen*, Las Vegas, Nevada, for the plaintiff.

*David B. Stinson*, Department of Justice, Washington, D.C., with whom were Assistant Attorney General *Peter D. Keisler*, *David M. Cohen*, Director, and *Brian M. Simkin*, Assistant Director, for defendant. *Timothy Treanor*, Small Business Administration, of counsel.

## OPINION

**Merow**, *Senior Judge.*

## INTRODUCTION

Plaintiff, Craig-Buff Limited Partnership ("Craig-Buff") entered into three loans secured by real property in Las Vegas, Nevada. The Small Business Administration ("SBA"), through sundry conveyances from the original lender, acquired two of the loans ("the SBA loans"). Payments on these two loans were made by Craig-Buff directly to SBA. The lender on the third loan was AT&T Small Business Lending Corporation, now CIT Small Business Lending Corporation ("CIT") (the "CIT loan"). SBA guaranteed 75% of the CIT loan.

The Complaint alleges that Craig-Buff sold the underlying property in reliance on SBA's loan balance statement. The amount that SBA initially communicated covered only the SBA loans not the CIT loan. Craig-Buff alleges that it entered into a contract and sold the underlying property based on the loan balance initially provided by the SBA. Had it been provided a loan balance which included the SBA loans and the CIT loan, Craig-Buff asserts that it would have realized approximately an additional $200,000 from the sale.

Defendant moves for summary judgment asserting: (1) that SBA did not provide incorrect loan balance information; (2) SBA had no contractual obligation to provide Craig-Buff with the balance owed on the CIT loan; (3) SBA did not breach the covenant of good faith and fair dealing as alleged; and (4) to the extent Craig-Buff may assert an action for detrimental reliance or misrepresentation, this court lacks jurisdiction over it.

## BACKGROUND

### *Facts*

Craig-Buff is a limited partnership doing business in the State of Nevada. (Compl. ¶ 1.) In October, 1997, Craig-Buff borrowed $799,732 from the AT&T Small Business Lending Corporation, now CIT. (*Id.* ¶ 4.) In November 1998, Craig-Buff borrowed $654,000 from New Ventures Capital Development Company ( "New Ventures"). (*Id.* ¶5.) Both the CIT and New Ventures loans (the SBA loans) were assigned to the SBA, which consolidated and serviced them. The SBA loans were made pursuant to section 504 of the Small Business Investment Act of 1958 (the "504 program"). See 15 U.S.C. §§ 695-697(f) (authorizing 504 loans).[1/]

On or about October 28, 1997, Craig-Buff borrowed an additional $245,000 from CIT. (*Id.* ¶ 7.) Pursuant to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) (authorizing general business program loans pursuant to section 7(a) of the

[1/] The 504 program was established to "foster economic development, create and preserve job opportunities, and stimulate growth, expansion and modernization of small businesses." 13 C.F.R. § 120.800. 504 loans are typically "long-term fixed-asset financing for small businesses." 13 C.F.R. § 120.2(c).

Small Business Act),[2/] SBA guaranteed seventy-five percent (75%) of the CIT loan. Mot. Summ. J. App. 1-12.) The CIT loan was subsequently increased to $294,000. (Compl. ¶ 9.) In a letter, dated December 17, 1998, from SBA to AT&T Small Business Lending Corporation, SBA consented to the loan increase. (Pl.'s Opp'n App. Ex. 3.)

Craig-Buff, AT&T Small Business Lending Corporation (now CIT), and SBA executed an "Authorization and Loan Agreement (Guaranty Loan)" concerning the CIT loan, which set forth the obligations of the parties. (Def.'s Mot. Summ. J. App. 1-12.) This agreement contains no provision placing an obligation on SBA to provide information on CIT's loan. SBA guaranteed 75% of the loan for the benefit of CIT. The SBA loans and CIT loan were both secured by the real property and improvements located at 4620 East Russell Road, Las Vegas, Nevada. (Compl. ¶ 11.)

On or about April 7, 2004, Craig-Buff entered into an agreement to sell the property securing the three loans for $2.5 million. (*Id.* ¶ 13.) In early June 2004, the prospective purchaser informed Craig-Buff that it was unable to finance the $2.5 million purchase price. (*Id.* ¶ 16.)

Subsequently, in response to Craig-Buff's inquiry, the SBA informed Craig-Buff that the payoff on the SBA loans was $1,763,643.62. (*Id.* ¶ 18.) Thereafter, on or about July 21, 2004, Craig-Buff entered into an amendment to the purchase agreement reducing the purchase price for the property securing the three loans to $2.3 million. (*Id.* ¶ 21.)

One day later, on about July 22, 2004, SBA informed Craig-Buff that the payoff figure of $1,763,643.62 did not include the amount due on the CIT loan. (*Id.* ¶ 22.) Additionally, on July 27, 2004, SBA informed the Nevada Title Company, the escrow agent under the purchase agreement, that the payoff on the SBA loans was $1,763,643.62, and $312,209.85 on the CIT loan. (*Id.* Ex. 4.) The July 27, 2004 SBA letter provided with respect to the CIT loan: "[p]lease send payment [to] CIT Small Business Lending Corp[.,] One CIT Drive, Suite 4321[,] Livingston, New Jersey 07039. This loan is being serviced by the bank, therefore the payments needs [sic] to

[2/] Section 7(a) loans provide financing for general business purposes and may be either: (i) a direct loan by SBA; (ii) an immediate participation loan by a lender and SBA; or (iii) a guaranteed (deferred participation) by which SBA guarantees a portion of a loan made by a lender. 13 C.F.R. § 120.2(a).

be made payable to them in order for the lien to be recorded accordingly." (Pl.'s Opp'n, App. Ex. 5) Craig-Buff proceeded with the sale of the property.[3/]

On April 29, 2005, Craig-Buff's Complaint was filed in this court alleging (1) breach of an implied contract, (2) breach of the covenant of good faith and fair dealing, and (3) detrimental reliance. Craig-Buff seeks damages in excess of $200,000, which represents the additional proceeds Craig-Buff asserts it would have received from the sale if SBA's initial payoff figure had included the amount due on the CIT loan. Costs and attorney's fees are also sought.

On August 26, 2005, the government moved, pursuant to RCFC 56, for summary judgment.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The court must resolve all reasonable inferences in favor of the nonmoving party. *Id*. at 255. The burden on the moving party is to demonstrate that there is no genuine issue of material facts, and may be discharged upon a showing "that there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987), quoting *Celotex*, 477 U.S. at 326. The burden then shifts to the nonmoving party to produce evidence setting forth specific facts of a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 256, 249-50*; Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d

[3/]Craig-Buff defaulted on the CIT loan and CIT made a claim with SBA for 75 percent of the loan, which SBA paid. As such, upon closing of the purchase agreement, both SBA and CIT held a portion of the loan. SBA directed proceeds allocable to the CIT loan be paid directly to CIT. (Def.'s Mot. Summ. J. App. 8.)

624, 627 (Fed. Cir. 1984) (citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836 (Fed. Cir. 1984)) (holding that the nonmovant "must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial."). Instead, to create "a genuine issue of fact, the nonmovant must do more than present some evidence on an issue it asserts is disputed." *Avia Group Int'l v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1560 (Fed. Cir. 1988).

**1. Breach of Contract**

Craig-Buff alleges that the SBA breached an implied contract when the SBA failed to provide Craig-Buff with the CIT loan balance. The Authorization and Loan Agreement ("loan agreement"), signed by Craig-Buff, CIT and SBA, regarding the CIT loan was provided by the government as an attachment to its dispositive motion. (Def.'s Mot. Summ. J. App. 1-12)

The existence of an express contract between the parties precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract. *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (citing *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir.1990)). Here, the implied contract Craig-Buff advances covers the same loan which is the subject of the written loan agreement. Craig-Buff does not dispute the authenticity of this agreement. Thereunder, SBA agreed only to "guarantee SEVENTY FIVE PERCENT (75%) of a loan in the amount of $245,000.00 to be made by Lender to Craig-Buff Limited Partnership." (Def.'s Mot. Summ. J. App. 1.) Contract interpretation begins with the plain language of the agreement. *Northrop Grumman Corp. v. Goldin,* 136 F.3d 1479, 1483 (Fed. Cir. 1998). If the contract language is clear and unambiguous, a court will give the words their plan and ordinary meaning and will not resort to extrinsic evidence. *Barseback Kraft, AB v. United States*, 121 F.3d 1475, 1479 (Fed. Cir. 1997)*; Wright Runstad Props. Ltd. P'shp. v. United States,* 40 Fed. Cl. 820, 824 (1998).

While the loan agreement contains various promises between SBA and CIT concerning the required provisions in the loan documents between CIT, the lender, and Craig-Buff, the borrower, Craig-Buff agreed to comply with these various conditions in order to "induce" SBA's partial "guarantee." (Def. Mot. Summ. J. App. 5.) This guarantee flows to CIT, the lender, albeit to Craig-Buff's ultimate benefit. The loan agreement contains no promises by SBA to provide payoff figures.

Craig-Buff contends that even though there is no express contract provision, the loan agreement is ambiguous as to whether the SBA had an obligation to provide payoff information such that a question of fact exists sufficient to preclude summary judgment.

Whether a contract provision is ambiguous is a question of law. *Cmty. Heating & Plumbing, Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993). If more than one meaning is reasonably consistent with the contract language, then the contract term is ambiguous. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996); *C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1544 (Fed. Cir. 1993). However, if there is only one reasonable interpretation, then the contract term is unambiguous. *Id*. If the contract is unambiguous, the court's inquiry is at an end and the plain language of the contract controls. *Textron Defense Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998); *Bristol-Myers Squibb Co. v. United States*, 48 Fed. Cl. 350, 354-55 (2000).

Fundamentally, SBA did not provide incorrect information. However, even if SBA did not provide correct information, no contractual rights are implicated here. There is no contractual obligation for SBA to provide data to Craig-Buff on the CIT loan upon which any breach claim could rest, and no ambiguity exists under the genuinely undisputed material facts.

Craig-Buff states, but does not provide evidentiary support, that its payments on the CIT loan were made directly to SBA. (Opp'n Mot. Summ. J. at 8.) In reply, the government attaches accounting records (with the specific CIT loan number) and copies of cancelled checks, showing that Craig-Buff submitted its loan payments to CIT, not SBA. Payments made to SBA on the CIT loan came from CIT not Craig-Buff, and payments made by Craig-Buff on the SBA loan were made directly to SBA. (Def.'s Reply App. 1-27.) Absent evidence to the contrary by plaintiff, no material issue of fact exists on this point.

Craig-Buff also contends that a reasonable interpretation of the following provisions of the loan agreement creates the contractual rights it seeks. Craig-Buff asserts it was required to (1) notify the SBA of its intent to prepay part of or all of the loan, (2) reimburse SBA for any expenses incurred in the making and administration of the loan, and (3) maintain accurate account records relating to Craig-Buff's financial condition. It is asserted that these provisions impose a duty on SBA to provide the CIT loan balance. Additionally, Craig-Buff argues that an SBA loan

settlement document provided that any questions concerning the CIT loan should be directed to SBA. Finally, Craig-Buff contends that the settlement document indicates that SBA is to "participate in the loan." (Pl.'s Opp'n 2.)

Neither the loan agreement, nor the settlement document create either an ambiguity or the contractual results Craig-Buff seeks. First, the prepayment notice provision is between Craig-Buff as borrower and CIT as holder or lender. Section 3.A.03 of the loan agreement provides:

> Borrower shall provide Holder with written notice of intent to prepay part or all of this loan at least 21 calendar days prior to the prepayment date. A prepayment is any payment made ahead of schedule that exceeds twenty (20%) percent of the then outstanding principal balance before such prepayment. If Borrower makes a prepayment and fails to give at least 21 days advance notice of intent to prepay, then, notwithstanding any other provisions to the contrary in this Note or other document, Borrower shall pay Holder 21 days interest on the unpaid principal as of the date preceding such prepayment.

(Def.'s Mot. Summ. J. App. 3.)

The holder was AT&T Small Business Lending Corporation, which subsequently became CIT. This provision is not ambiguous and does create the contractual rights Craig-Buff desires.

Secondly, Craig-Buff contends that it was required to reimburse SBA for expenses incurred in the making and administration of the loan, and that a payoff duty arises out of that provision. The government counters that the loan agreement only requires Craig-Buff to reimburse the lender not SBA. Specifically, provision 4B of the loan agreement provides:

> Borrower will, on demand, reimburse Lender for any and all expenses incurred, or which may be hereafter incurred, by Lender from time to time in connection with or by reason of Borrower's application for, and the making and administration of the loan.

(*Id.* at 5.)

The reimbursement obligation runs between CIT as the lender and Craig-Buff, the borrower. This provision is neither ambiguous nor does it create the contractual rights Craig-Buff seeks.

Thirdly, Craig-Buff contends that SBA had a duty to provide the CIT loan balance because Craig-Buff was required to maintain accurate financial records. Provision 4.C of the loan agreement provides that:

> Borrower will at all times keep proper books of account in a manner satisfactory to Lender and/or SBA. Borrower hereby authorizes Lender or SBA to make or cause to be made, at Borrower's expense and in such manner and at such times as Lender or SBA may require, (a) inspections and audits of any books, records and paper in the custody or control of Borrower or others, relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (b) inspections and appraisals of any of Borrower's assets. Borrower will furnish to Lender for the twelve month period ending December 31, 1997 and annually thereafter, (no later than 3 months following the expiration of any such period) and at such other times and in such form as Lender may prescribe, Borrower's financial and operating statements. Borrower hereby authorizes all Federal, State and municipal authorities to furnish reports of examinations, records, and other information relating to the conditions and affairs of Borrower and any desired information from reports, files, and records of such authorities upon request therefore by Lender or SBA.

(*Id.*)

This provision is unilateral. Craig-Buff has the obligation to provide certain records to either the lender or SBA. This provision is neither ambiguous nor does it create the contractual rights Craig-Buff seeks.

Fourth, Craig-Buff contends that SBA had a duty to provide the CIT loan balance because the loan settlement documents refer questions to the SBA. Specifically, the settlement document provides,

> The estimated burden for completion of this form is 1 hour per response. If you have any questions or comments concerning this estimate or any other aspects of this information collection, please contact Chief,

> Administrative Information Branch, U.S. Small Business Administration, Washington, D.C. 20416 and Clearance Officer, Paperwork Reduction Project (3245-0200), Office of Management and Budget, Washington, D.C. 20503.

(Pl.'s Opp'n App. Ex. 4.)

This provision is neither ambiguous nor does it impose any obligation on SBA vis-a-vis Craig-Buff. The question and comments mentioned refer to the Paperwork Reduction Act.

In sum, Craig-Buff's Complaint fails to allege elements requisite to the formation of a contract with the government in this regard, either express or implied– that is mutual intent to contract including offer, acceptance, consideration and authority on the part of the government representative to bind the United States in contract. *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005).

**2. Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count II, Craig-Buff avers that SBA caused it injury by failing to disclose the CIT loan balance in the initial payoff amount. Craig-Buff avers that the obligation to give the CIT loan balance was inherent in the loan agreement, and consistent with the obligations of Craig-Buff to make timely payments and maintain accurate records. In support of its argument that a claim for breach of implied covenant of good faith and fair dealing is not limited to enforcing the express terms of the contract, Craig-Buff cites *United States v. Basin Elec. Power Co-op*, 248 F.3d 781, 790 (8th Cir. 2001) ("since good faith is merely a way of effectuating the parties intent in unforseen circumstances, the implied covenant has 'nothing to do with the enforcement of terms actually negotiated . . . .'").

Craig-Buff correctly notes that a claim for a breach of implied covenant of good faith and fair dealing is not limited to specific contract terms.

> The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner. The covenant imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.

*Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (citing Restatement (Second) of Contracts § 205 (1981)).

However, good faith cannot be construed to give rise to new obligations not otherwise contained in the contract's express terms. *Id.*

Under the loan agreement SBA was a partial guarantor to CIT. Asserting breach of the good faith covenant does not create a contractual obligation out of new cloth. To do so would require the contract to be rewritten so as to give Craig-Buff benefits for which it did not bargain and impose on the SBA obligations for which it did not agree.

Furthermore, Craig-Buff has not alleged facts from which bad faith or hindrance could be found. *Cf. Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005). Craig-Buff has failed to provide any evidence, whether in an affidavit or otherwise, that could be offered at trial to show the existence of a genuine issue of fact concerning lack of good faith in SBA's actions even assuming any implied contract could be found.

**3. Detrimental Reliance and Promissory Estoppel**

In Count III, Craig-Buff alleges misrepresentation and reliance. The government contends that Craig-Buff's claim must be dismissed because the court lacks jurisdiction over this count. Craig-Buff counters that jurisdiction is proper because the claim of detrimental reliance here sounds in contract. Specifically, Craig-Buff alleges that (1) SBA provided an initial payoff amount that included both the SBA loans and the CIT loan; (2) that Craig-Buff relied, to its detriment, on SBA's representation; and (3) in reliance upon SBA's alleged misrepresentation and failure to disclose the CIT balance, Craig-Buff renegotiated with the buyer and agreed to lower the purchase price for the underlying real property, expecting to realize a profit based on its understanding of the payoff amount on all three loans.[4/]

---

[4/] Craig-Buff asserts it would not have reduced the price had it known the amount of the entire secured debt. This assertion is questionable because, at the higher price, the buyer was unable to complete the transaction. Additionally, Craig-Buff knew or should have known of the existence of an additional loan amount because it was required to keep accurate books and records of its loans. However, for the purposes of the instant motion, the assertion is accepted at face value.

Craig-Buff's claim is one of detrimental reliance or promissory estoppel. *See Sinclair v. United States*, 56 Fed. Cl. 270, 281 (2003). In *Sinclair*, the court explained that equitable estoppel operates to prevent the denial of the existence of a contract, and promissory estoppel creates a contract that otherwise would not exist. *Id*. "'Promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have . . . Promissory estoppel is a sword, and equitable estoppel is a shield."' *Id*., citing *Biagioli v. United States,* 2 Cl. Ct. 304, 307 (1983) (quoting *Jablon v. United States,* 657 F.2d 1064, 1068 (9th Cir.1981)). "This court has no jurisdiction over claims for promissory estoppel, as it requires the finding of a contract implied-in-law against the Government, for which there has been no waiver of sovereign immunity." *Id.*, (citing *Hercules, Inc. v. United States,* 516 U.S 417, 423-24 (1996)). Craig-Buff's efforts to create a contract where none exists falls in the classic "sword" category and must be dismissed on jurisdictional grounds. *See* RCFC 12(b)(1).

Even if it is assumed that SBA provided incorrect information upon which Craig-Buff relied on to its detriment (i.e., it received less than available proceeds from the property sale), no valid cause of action is stated. *United Pacific Ins. Co. v. Roche*, 401 F.3d 1362 (Fed. Cir. 2005) (rejecting claimed cause of action against the government for supplying incorrect information absent claim of affirmative misconduct). *See also Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000). In the absence of a contractual obligation, plaintiff's claim, if any, sounds in tort and may be covered by the Federal Torts Claims Act. 28 U.S.C. § 1346(b). This Act, however, bars claims for "misrepresentation." 28 U.S.C. § 2680(h). In the case of asserted mishandling of loans, the distinction between actionable negligent performance of operational tasks and communication of information which is not actionable, is slippery. *See Saraw Partnership, et al. v. United States*, 67 F.3d 567, 570 (5th Cir. 1995); *see also Block v. Neal*, 460 U.S. 289 (1983) (distinguishing *United States v. Neustadt*, 366 U.S. 696 (1961)). The distinction is not one this court can resolve as its jurisdiction does not extend over tort claims. 28 U.S.C. § 1491(a)(1); *Smithson v. United States*, 847 F.2d 791, 795 (Fed. Cir. 1988) ("any undue delay by [the Farmers Home Administration] in making the loan, or failure to provide alternative loans or loan servicing relief, is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction."); *Somali Dev. Bank v. United States*, 205 Ct. Cl. 741, 749, 508 F.2d 817, 821 (1974). Moreover, in the absence of any indication that plaintiff complied with the prerequisites for the filing of a tort claim, 28 U.S.C. § 2675, transfer to a district court pursuant to 28 U.S.C. § 1631 would not be in the interests of justice.

## CONCLUSION

As no contractual obligation has been established for supplying the loan balance information on which plaintiff grounds its cause of action, and no material issue of fact has been established to preclude summary judgment, it is concluded and **ORDERED** that Defendant's Motion for Summary Judgment, filed August 26, 2005, shall be **GRANTED**, and the Complaint, filed April 29, 2005, shall be **DISMISSED**. **No costs**.

s/ James F. Merow
James F. Merow
Senior Judge